U.S. COURT OF APPEALS
RECEIVED
Apr 29, 2026
FIFTH CIRCUIT

**No. 26-10182**

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

IVANA SANDERS

*Plaintiff-Appellant*

*V*.

FEDEX OFFICE AND PRINT SERVICES, INC., CHRIS RICHARDSON,
JUSTYN HERSMA

*Defendant-Appellees*

---

Appeal From The United States District Court
for the Northern District Of Texas Fort Worth Division

---

# BRIEF FOR APPELLANT

---

IVANA SANDERS
Pro Se Plaintiff - Appellant
IvanaSanders27@gmail.com
(704) 206-9995
P.O.BOX 803681
DALLAS, TX 75380

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this **Civil Case No. 26-10182**. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Pro Se Plaintiff - Appellant:**
IVANA SANDERS
IvanaSanders27@gmail.com
(704) 206-9995
P.O.BOX 803681
DALLAS, TX 75380

**Defendants-Appellees:**
FedEx Office and Print Services, Inc., Chris Richardson, Justyn Hersma

**Counsel for Defendants-Appellees:**
EVA W. TURNER
Texas Bar No. 24051485
eva.turner@ogletree.com

SHAINA E. HICKS
Texas Bar No. 24139802
shaina.hicks@ogletree.com

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Preston Commons West
8117 Preston Road, Suite 500
Dallas, Texas 75225
214.987.3800 (Phone)
214.987.3927 (Fax)

*/s/ Ivana Sanders*
PRO SE PLAINTIFF-APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

The Plaintiff-Appellant respectfully requests oral argument and a published opinion in this matter. This appeal is appropriate for published opinion as it requests the resolution of a novel issue of significance which will provide needed guidance for employers, employees, and district courts in order to keep the federal understanding of the law consistent. This appeal presents a substantial question of law regarding the "reasonable belief" standard under controlling precedent established by *EEOC v. Rite Way Service, Inc., 819 F.3d 235 (5th Cir. 2016)*, *Long v. Eastfield College (5th Cir. 1996)*, and *Wallace v. Performance Contractors, No. 21-30482 (5th Cir. 2023)* which decided that opposition is protected when an employee “reasonably believes” she is reporting unlawful discrimination, even if she does not use legal terms.

Applying that controlling federal law, an employee’s “reasonable belief” standard is logically “policy-bridged” by the employer’s own terminology intertwining “harassment” and “discrimination” as a one and the same and under the same Equal Employment Opportunity (EEO) umbrella as prohibited rights violations. This appeal evaluates whether an employee’s use of an employer’s own internal EEO policy terminology—specifically reporting "harassment" to a

designated EEO compliance department—constitutes protected activity under Title VII and 42 U.S.C. § 1981. If so internal complaints regarding concepts defined by the company literally as "forms of discrimination," should be considered "protected opposition" as the terms and conditions of employment are central to retaliation and discrimination claims as per *Hamilton v. Dallas County, No. 21-10133 (5th Cir. 2023)*.

This appeal raises a timely and precedent-worthy question: when, as here, a decision-maker blatantly admits he retaliated because an employee used those same terms that company policy treats as interchangeable "harassment" and "discrimination" within the internal reporting channels provided by the company to report EEO violations how is the law consistent when a District Court nonetheless rules that those complaints are not protected activity as a matter of law, or must that question go to a jury?

Resolution of this issue will provide clarity for future matters regarding how a company's internal anti-harassment framework intersects with § 1981 and Title VII retaliation and discrimination standards, a matter of substantial public and professional interest given the central role such policies play in modern workplace compliance.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT

TABLE OF CONTENTS

TABLE OF AUTHORITIES

STATEMENT OF JURISDICTION

I. INTRODUCTION

A. Statement of the Case

1. Nature of the Case

2. Course of Proceedings

II. LEGAL ARGUMENT

A. Statement of Facts

1. Four (4) Substantive Errors by the District Court

a) The Court Applied A Legally Incorrect Standard For "Protected Activity" Under Fifth Circuit Law

b) Reasonable Belief and Interchangeable Terms

2. Statements of Protected Opposition

a) Fifth Circuit Law Does Not Require "Magic Words" To Establish Protected Activity

3. The Court Analysis Does Not Account For Direct Evidence Of Retaliation

a) Direct Admissions By The Defendants-Appellees On Audio Recording

i. Retaliatory Contingency

ii. The “Two Options” Ultimatum

iii. Hersma’s Lack Of Denial Regarding Retaliatory Contingency

iv. Sanders Expressing Knowledge Of Jeopardy From Richardson For Reporting To Fedex Human Resources

v. Witness Corroboration Of Management’s False Narrative

4. The District Court Did Not Apply Rule 56 Correctly To Evidence

5. The District Court Relies On A Material Factual Error Regarding Timing of the Promotion

a) Sequence Of Events and Causal Connections

b) Direct Admission Undisputed By Defendants-Appellees

B. Summary of the Argument

1. Core Legal Error

2. Evidence The District Court Overlooked

3. Direct Admissions Of Retaliatory Intent By Defendants

4. Summary Judgment Standard

5. But-For Causation

III. CONCLUSION

IV. CERTIFICATE OF SERVICE

V. CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

*Page(s)*

**Case**

*Allen v. U.S. Postal Service*,
*63 F.4th 292 (5th Cir. 2023)*.......................................... *2, 21, 58*
*Anderson v. Liberty Lobby, Inc.*,
*477 U.S. 242 (1986)*.......................................................... *4*
*Celotex Corp. v. Catrett*,
*477 U.S. 317, 324 (1986)*.................................................. *38*
*City of Keller v. Wilson*,
168 S.W.3d 816 (Tex. 2005).................................................. *63*
*Clark Cnty. Sch. Dist. v. Breeden*,
532 U.S. 268, 273-74 (2001)................................................. *58*
*Coleman v. Md. Ct. of App.*,
*626 F.3d 187, 190 (4th Cir. 2010)*........................................ *58*
*Crawford v. Metropolitan Gov't of Nashville*,
*555 U.S. 271 (2009)*.............................................. *12, 20 , 61*
*EEOC v. Rite Way Service, Inc.*,
*819 F.3d 235 (5th Cir. 2016)*............................ *iii, 1, 6, 8, 16, 17*
*Eisenstadt v. Centel Corp.*,
*113 F.3d 738, 742 (7th Cir. 1997)*........................................ *38*
*Espinal v. Goord*,
*558 F.3d 119, 129 (2d Cir. 2009)*......................................... *65*
*Fiest v. Louisiana*,
730 F.3d 450, 454 (5th Cir. 2013)......................................... *58*
*Fraser v. Goodale*,
*342 F.3d 1032, 1036 (9th Cir. 2003)*..................................... *37*
*Garcia v. Professional Contract Services, Inc.*,
*938 F.3d 236, 241 (5th Cir. 2019)*........................................ *58*
*Garside v. Osco Drug, Inc*,
F.2d 46 (1st Cir. 1990)........................................................ *39*
*Gee v. Principi*,
*289 F.3d. 342, 345 (5th Cir. 2002)*....................................... *58*

*Gorman v. Verizon Wireless Tex., L.L.C.*,
*753 F.3d 165, 170 (5th Cir. 2014)*……………………………………………58
*Hamilton v. Dallas County*,
*No. 21-10133 (5th Cir. 2023)*…………………………………… vi, 2, 17
*J F Feeser, Inc v. Serv-A-Portion, Inc.*,
*(909 F.2d 1524) (3d Cir. 1990)*……………………………………………39
*Kapetanovich v. Rockwell Int'l, Inc.*,
*(3d Cir. July 15, 1992)*………………………………………………………38
*King v. Ford Motor Co.*,
872 F.3d 833 (7th Cir. 2017)…………………………………………………64
*Lee v. Offshore Logistical & Transp., LLC*,
*859 F.3d 353, 355 (5th Cir. 2017)*…………………………………………37
*Long v. Eastfield College*
*(5th Cir. 1996)*……………………………………………………………iii, 17
*LSR Consulting, LLC v. Wells Fargo Bank, N.A.*,
*835 F.3d 530, 534 (5th Cir. 2016)*………………………………………… 37
*Major League Baseball Props. v. Salvino, Inc.*,
*542 F.3d 290, 310 (2d Cir. 2008)*……………………………………………20
*Maurer v. Independence Town*
*(5th Cir. 2017)*…………………………………………………………………37
*McMillian v. Johnson*,
88 F.3d 1573, 1584 (11th Cir. 1996)…………………………………………38
*Patel v. Texas Tech Univ.*
*(5th Cir. 2021)*…………………………………………………………………37
*Porter v. Houma Terrebonne Hous. Auth.*,
*No. 14-31090 (5th Cir. 2015)*……………………………………………41, 62
*Reeves v. Sanderson Plumbing Products, Inc.*,
*530 U.S. 133, 150 (2000)*…………………………………………………2, 63
*Summa v. Hofstra Univ.*,
*708 F.3d at 127-28 (2d Cir. 2013)*…………………………………………65
*Tolan v. Cotton*,
*572 U.S. 650, 656–57 (2014)*……………………………………………3, 4, 63
*Vega v. Hempstead Union Free Sch. Dist.*,
*801 F.3d 72, 90 (2d Cir. 2015)*………………………………………………65
*Wallace v. Performance Contractors*,
*No. 21-30482 (5th Cir. 2023)*…………………………………… iii, 2, 12, 17

*Washburn v. Harvey*,
*504 F.3d 505, 510 (5th Cir. 2007)*……………………………………………. *66*
*Zann Kwan v. Andalex Grp. LLC*,
737 F.3d 834, 845 (2d Cir. 2013)………………………………………..… *65*

*Page(s)*

**Statutes**

28 U.S.C. § 1331…………………………………………………………………. *1*
42 U.S.C. § 1981…………………………………………………..… *iv, 1, 2, 3, 4, 8, 58*
28 U.S.C. § 1291………………………………………………………………...…... *1*
28 U.S.C. § 1746…………………………………………………………………..... *19*
42 U.S.C. § 2000e-3(a) - Title VII of the Civil Rights Act of 1964……………...… *iv, 2, 3, 4, 8, 11, 12, 16, 17, 29*
Lab. Code § 21.051 - TCHRA……………………………………………...…… *2, 3, 4, 8*
Fed. R. 56(c)(2)………………………………………………………………….... *4, 37*
Fed. R. Evid. 901(b)(1)……………………………………..…………………... *18*
Fed. R. Civ. 56(a)………………………………………………………………... 60
Texas R. Evid. 401……………………………………..…………………….... *19*
Texas R. Evid. 602…………………………………………………………..…... *19*
Texas R. Evid. 603…………………………………………………………..…... *19*
Texas R. Evid. 901(1)………………………………………………………….... *18*
Texas R. Evid. 901(a)………………………………………………………….... *18*
Texas R. Evid. 902…………………………………………………………..…... *38*
Texas R. Evid. 1007……………………………………………………………..… *19*

## STATEMENT OF JURISDICTION

- The United States District Court for the Northern District of Texas Fort Worth Division had jurisdiction under 28 U.S.C. § 1331 because this action arises under 42 U.S.C. § 1981.
- The Fifth Circuit Appellate Court has jurisdiction under 28 U.S.C. § 1291 because this appeal is taken from a final judgment disposing of all claims.
- The District Court entered final judgment on December 2, 2025.
- The District Court denied Rule 59(e) on December 23, 2025.
- Plaintiff-Appellant timely filed a Notice of Appeal on February 23, 2026.

## STATEMENT OF THE ISSUES

- Whether the District Court erred in granting summary judgment by concluding that Plaintiff-Appellant's internal HR complaints detailed behavior it deemed "as antisocial at worst" rather than "protected activity" and effectively imposed a "magic words" requirement that conflicts with *EEOC v. Rite Way Service, Inc., 819 F.3d 235 (5th Cir. 2016);*
- Whether the District Court failed to view evidence of decision-maker/managers' (Store Manager Justyn Hersma and District Manager Christian Richardson)

direct admissions of retaliatory motive in the light most favorable to the non-movant *Allen v. U.S. Postal Service, 63 F.4th 292 (5th Cir. 2023)*;

- Whether the District Court overlooked the reasonable awareness that the employer (Defendant-Appellees) had that the employee (Sanders) was participating in protected activities in opposition to discrimination when she utilizes the specific reporting channels and specific terminology (i.e., "harassment" and "hostile environment") mandated by the employer's own Equal Employment Opportunity (EEO) policies *Hamilton v. Dallas County, No. 21-10133 (5th Cir. 2023)*;
- Whether the District Court improperly granted summary judgment by resolving factual inferences against the Plaintiff-Appellant while relying on an incorrect sequence of pertinent events *Wallace v. Performance Contractors, No. 21-30482 (5th Cir. 2023)*;
- Whether Plaintiff-Appellant engaged in protected opposition under 42 U.S.C. § 1981, Title VII, and TCHRA;
- Whether decision-maker's repeated admissions reflecting retaliatory intent created a genuine dispute of material fact *Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000)*;

- Whether the District Court violated the summary judgment standard as established by the Fifth Circuit and Supreme Court by weighing evidence, specifically by disregarding direct evidence of retaliatory intent found in audio recordings corroborated by testimony under oath, where the decision-maker linked the Plaintiff-Appellant's promotion opportunities to the cessation of her HR complaints, instead of allowing a jury to decide, *Tolan v. Cotton, 572 U.S. 650, 656–57 (2014)*.

## STATEMENT OF THE CASE

### *Nature of the Case*

This is a retaliation action brought under 42 U.S.C. § 1981, Title VII, and Texas Commission on Human Rights Act (TCHRA). Plaintiff-Appellant complained of discriminatory treatment and was subsequently subjected to adverse employment actions by the same two decision-makers (Hersma and Richardson) both of whom had reasonable belief that the Plaintiff-Appellant was reporting discriminatory conduct. Both decision-makers made direct admissions detailing the reason for their adverse actions being specifically due to retaliatory motives. Evidence including Audio Recordings corroborated by Direct Testimony under

oath have been provided to the courts of the Defendants-Appellees' direct admissions of retaliatory motive.

### *Course of Proceedings*

- Plaintiff-Appellant filed suit in the United States District Court for the Northern District of Texas.
- Defendant moved for summary judgment.
- The district court granted summary judgment in favor of the Defendants.
- Plaintiff-Appellant filed a Rule 59(e) motion, which was denied.
- This appeal followed.

## STATEMENT OF FACTS

### *Four (4) Substantive Errors by District Court*

The District Court did in fact resolve a factual dispute, adopted the Defendants-Appellees' interpretation of events, and discounted evidence favorable to the non-moving party/the Plaintiff-Appellant, *Tolan v. Cotton 572 U.S. 650 (2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)*.

1. The District Court overlooks the legal statutes established by the controlling Fifth Circuit court and Supreme Court precedent determining the definition of "Protected Activity", Rule 56(c)(2), Title VII, §1981, TCHRA.

2. The District Court overlooked that a reasonable jury could conclude that FedEx management and decision-makers were aware and on notice that Sanders was opposing race-based discrimination in light of FedEx's own anti-harassment/ anti-discrimination framework which make it clear that "harassment" in FedEx's EEO policy explicitly defines "harassment" as a form of "unlawful discrimination" tied to protected status, not merely rude or "antisocial" behavior. FedEx team members are "required" to "speak up" about harassment "without fear of retaliation," reinforcing that internal reports of "harassment" are treated as complaints about "perceived unlawful discrimination".

3. The District Court relied on an incorrect sequence of events regarding the timing of the Plaintiff-Appellant's promotion contrary to the Documented Record and Direct Evidence.

4. The District Court does not account for direct admissions of retaliatory intent by the Defendants-Appellees BEFORE the withheld promotion on Audio Recording and corroborated by direct testimony, deposition under oath, and an unsworn declaration.

The errors were **not** harmless. The perceived absence of "protected activity" was the sole basis on which summary judgment was granted to the Defendants-Appellees.

## I. THE COURT APPLIED A LEGALLY INCORRECT STANDARD FOR "PROTECTED ACTIVITY" UNDER FIFTH CIRCUIT LAW

The Court dismissed Plaintiff's case with prejudice solely because:

"Plaintiff has failed to present evidence demonstrating a genuine issue of fact as to whether her pre-promotion complaints… constituted protected activity."

— Docket No. 84 pg. 1–2[1]

This legal conclusion is **contrary to controlling Fifth Circuit precedent** and **contrary to the factual record**.

### A. Reasonable Belief and Interchangeable Terms

The District Court characterized Plaintiff-Appellant's complaints as describing behavior that is "antisocial at worst,"[2] a label that ignores the "reasonable belief" standard set forth in *EEOC v. Rite Way Service, Inc., 819 F.3d 235 (5th Cir. 2016)*. Crucial to the "reasonable belief" analysis is the employer's own guidance to its employees. The summary-judgment record contains FedEx's own policies confirm that Sanders's complaints of workplace harassment reasonably alerted management to discrimination concerns. A reasonable employee

---

[1] ROA. 26-10182. 1107, 1108 (Order Adopting Magistrate Judge's 76 (P.1035) Findings And Conclusions)

[2] ROA. 26-10182. 1179, 1180 (Order Denying Motion To Alter Or Amend Judgment)

at FedEx Office, reading the Team Member Handbook Page 15, would understand that "harassment" and "discrimination" are part of the same Equal Employment Opportunity (EEO) category.[3] FedEx's own policy groups "harassment" and "discrimination" under the same Equal Opportunity umbrella it is objectively reasonable for an employee to use those terms interchangeably and for management to understand those words interchangeably. The FedEx Team Member Handbook points out that "harassment" is framed internally/company wide as a discrimination concept stating, "Any form of unlawful **discrimination, including harassment**, is prohibited and shall be considered a violation of the FedEx Office policy of Equal Employment Opportunity".[4] The FedEx Team Member Handbook p.g. 18 even lists "harassment" as "discrimination" under the heading "Non-Retaliation" the company stating, "FedEx Office strictly prohibits retaliation against a team member who reports an incident they believe to be in violation of this policy or who participates in the investigation of **harassment or other discrimination complaints**."[5]

---

[3] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 15)

[4] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 15)

[5] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 18)

The summary-judgment records contains the Plaintiff-Appellant's written and audio recorded Human Resources communications **express her reasonable belief that she was facing a long-term (11-month) pattern of repeated ongoing pervasive harassment and retaliation directed disproportionately at Black employees**. Her complaints **explicitly identified race and pinpointed a pattern of racial harassment of multiple African-American employees including herself**, removing any doubt under Title VII, §1981, or TCHRA. By reporting 'harassment' to Human Resources, the Appellant was utilizing the specific terminology and reporting channels mandated by the Appellee. Under *EEOC v. Rite Way Service, Inc*., the court must look at the context; here, the context is a corporate policy that treats these terms as interchangeable.

FedEx's own policies confirm that, within this workplace, "harassment" is not a neutral term, but a core part of its very own **Anti-Discrimination framework**. The FedEx Code of Conduct states the company, "does not tolerate discrimination or harassment based on any…characteristic protected under national, state, or local laws,"[6] The policies appear under the heading **"Equal**

[6] ROA.1097. (Filename: "(App. D, Vol. 4, Ex. 2) - FedEx Code of Conduct.pdf" p.g. 11)

**Opportunity and Anti-Harassment”**[7] again making clear that at FedEx “harassment” is used as a term highlighting a form of prohibited discrimination tied to protected status, not merely rude or “antisocial” behavior. FedEx explicitly groups “discrimination” and “harassment” under its Equal Employment Opportunity commitment.[8] When an employee follows the specific reporting channels laid out in an "Equal Employment Opportunity" policy to report "harassment," they are engaging in **protected opposition** as defined by the employer’s own compliance framework. Against that backdrop, eleven (11) months of Sanders’s repeated written and verbal complaints describing “Harassment,”[9] a “pattern of black employees being harassed,”[10] “Targeted Harassment,”[11] a “hostile work environment,”[12] “persistent workplace harassment,”[13] were not generic personality disputes.

---

[7] ROA. 1097. (Filename: “(App. D, Vol. 4, Ex. 2) - FedEx Code of Conduct.pdf” p.g. 11)

[8] ROA. 1097. (Filename: “(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook” p.g. 16)

[9] ROA. 511.

[10] ROA, 1097. (Filename: “(App. F, Vol. 6, Ex. 2) - PATTERN OF DISCRIMINATION - Coercion - Retaliation - Physical Violation” p.g. 1)

[11] ROA. 511.

[12] ROA. 494.

[13] ROA. 494.

When an employee in a FedEx Office governed by these policies repeatedly reports eleven (11) months of "persistent targeted harassment", "hostile work environment," "threatening,"[14] "intimidation,"[15] and follows up with the January 2023 complaint[16] explicitly describing "discriminatory harassment,"[17] "racial bias,"[18] and "discriminatory allegations"[19] by multiple white coworkers directed at multiple black coworkers, and the decision-maker himself (Hersma) admitted that he conditioned her promotion on her refraining from making any more Human Resources complaints about the harassment[20], a reasonable jury could conclude that FedEx was on notice that Sanders was opposing race-based discrimination, not simply coworker incivility and then admittedly retaliated against Sanders for participating in protected activities. In light of FedEx's own Anti-Harassment/

---

[14] ROA. 503.

[15] ROA 1097 (Filename: "(App. F, Vol. 6, Ex. 2) - PATTERN OF DISCRIMINATION - Coercion - Retaliation - Physical Violation" p.g. 1)

[16] ROA 1097 (Filename: "(App. F, Vol. 6, Ex. 2) - PATTERN OF DISCRIMINATION - Coercion - Retaliation - Physical Violation" p.g. 1)

[17] ROA 1097 (Filename: "(App. F, Vol. 6, Ex. 2) - PATTERN OF DISCRIMINATION - Coercion - Retaliation - Physical Violation" p.g. 1)

[18] ROA 1097 (Filename: "(App. F, Vol. 6, Ex. 2) - PATTERN OF DISCRIMINATION - Coercion - Retaliation - Physical Violation" p.g. 1)

[19] ROA 1097 (Filename: "(App. F, Vol. 6, Ex. 2) - PATTERN OF DISCRIMINATION - Coercion - Retaliation - Physical Violation" p.g. 2)

[20] ROA. 1097 (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4)

Anti-Discrimination framework, the Defendants-Appellees would have had reasonable belief that Sanders was indeed reporting discriminatory harassment as per their own global company standard.

FedEx tells all of its employees who believe their Equal Employment Opportunity (EEO) rights have been violated must report the incident through the Anti-Harassment reporting process.[21] At FedEx reporting harassment IS reporting discrimination-related misconduct management would understand harassment complaints as EEO issues which is supported by Title VII of the Civil Rights Act of 1964. FedEx company policy states, "Any form of retaliation against team members…who oppose any action in violation of FedEx Office policies or anti-discrimination laws or regulations is strictly prohibited."[22] FedEx recognizes that reporting "harassment" falls under their Anti-Discrimination policy and thusly this language reflects that FedEx employees are encouraged to oppose and report discriminatory conduct, "including harassment"[23]. The FedEx company policy explicitly connects harassment with (EEO) standards, "Team members who feel they have had their EEO rights violated must immediately report the incident to

[21] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 2) - FedEx Code of Conduct.pdf" p.g. 11)

[22] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 15)

[23] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 15)

management using the reporting process outlined in the harassment policy."[24] At FedEx when an employee reports harassment, FedEx (including Hersma and Richardson, FedEx management, FedEx Human Resources) would understand it as potential discrimination based on protected status.

As the Supreme Court held in *Crawford v. Metropolitan Gov't of Nashville, 555 U.S. 271 (2009)*, "opposition" includes the act of "contending against" or "resisting" behavior the employee reasonably believes is unlawful as reinforced by *Wallace (2023)*. By following FedEx's internal mandate to report "harassment" to Human Resources—the very department tasked with Title VII compliance—Plaintiff-Appellant's activity was "protected" because she was utilizing the company's designated bridge for reporting civil rights violations. In this policy framework—where harassment complaints are treated as part of the company's EEO enforcement system—within a nation where controlling federal law does not require employees to use precise legal terminology when opposing discriminatory conduct, the District Court erred in labeling the Plaintiff-Appellant's complaints as merely behavior that is "antisocial at worst". The District Court's failure to

---

[24] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 15)

consider the interchangeable nature of these terms within the FedEx policy constitutes a legal error that warrants reversal.

STATEMENTS OF PROTECTED OPPOSITION

Below are excerpts from the Plaintiff-Appellant's five (5) separate written Human Resources (HR) complaints specifically referencing "harassment," "targeted harassment," "pattern of black employees harassed," and "hostile work environment". All of these HR complaints were submitted over the course of eleven (11) months as she experienced a persistent, pervasive discriminatory harassment by a white coworker.

In the five (5) Human Resources complaints, the Plaintiff-Appellant further expounds upon witnessing a separate highly volatile ongoing racial harassment issue involving a different white coworker (a white male Matthew Westbrook) and two other black coworkers (James Brock and Trevor Bracy) while she herself is still facing escalating racial harassment from (Kecia Barnhill) as well all under the direct supervision of the same decision-makers, Hersma and Richardson.

Each complaint follows the guidelines with the FedEx company framework which regards "harassment" and "discrimination" as being under the same Equal Employment Opportunity (EEO) framework.

- "As I have said in these letters before, constantly having to be on receiving end of her bullying and harassment is emotionally and mentally taxing, exhausting, and anxiety inducing. Her [Barnhill] behavior is scary."[25]

- "…it is…targeted harassment."[26]

- "Continued pattern of black employees being harassed at this FedEx Office."[27]

- "The harassment has turned physically threatening"[28]

- "My District Manager [Richardson] told me that I was required to to endure and tolerate discriminatory harassment and abuse or else he had 'no use for me'. Management [Hersma] threatened me with a retaliation contingency that the only way that I could receive a promotion was to stop filing HR complaints of about several serious, alarming infractions [by] white harassing coworker…"[29]

- "My harasser is creating a hostile work environment for me."[30]

---

[25] ROA. 524.

[26] ROA. 511.

[27] ROA. 1097. (Filename: "(App. F, Vol. 6, Ex. 2) - PATTERN OF DISCRIMINATION - Coercion - Retaliation - Physical Violation" p.g. 1)

[28] ROA. 503.

[29] ROA. 1097. (Filename: "(App. F, Vol. 6, Ex. 2) - PATTERN OF DISCRIMINATION - Coercion - Retaliation - Physical Violation" p.g. 1)

[30] ROA. 494.

- "The racial bias of the men in authority who are all white men (the District Manager, Chris Richardson; my Store Manager Justyn Hersma (who was just recently transferred); the District HR person Joseph Davidson) has resulted in the Intimidation and Coercion by telling me that:….if they have to hear about any of these complaints again, that I would be risking being forcibly transferred or having my hours reduced."[31]

- "IT IS WORKPLACE HARASSMENT. IT IS WORKPLACE BULLYING."[32]

- "Targeted False Discriminatory Allegations….Kecia [Barnhill] (who is white) falsely accused me (who is black) of stealing….which was not true."[33]

- "FEAR is what I feel because of Kecia Barnhill's vendetta against me. Her persistent WORKPLACE HARASSMENT AND BULLYING towards me still continues and never stops.[34]

---

[31] ROA. 1097. (Filename: "(App. F, Vol. 6, Ex. 2) - PATTERN OF DISCRIMINATION - Coercion - Retaliation - Physical Violation" p.g. 1)

[32] ROA. 498.

[33] ROA. 1097. (Filename: "(App. F, Vol. 6, Ex. 2) - PATTERN OF DISCRIMINATION - Coercion - Retaliation - Physical Violation" p.g. 2)

[34] ROA. 494.

- "The people, "my superiors" (all white men) I am supposed to turn to for support and safety….in matters like this for protection and resolution…have let me, the black female, down while protecting the white female [Barnhill]…who has ONLY…sought me and singled me out to harass; as a result of this coercion and intimidation; the Breach of the FedEx Code of Conduct and the seriousness of these infractions not being taken seriously by FedEx which are all on the FedEx FedEx Violence Prevention (30 Indicators of Troubling Situations of Warning Signs that are Indicators of Workplace Violence; and the pattern of black employees being harassed, and nothing being done about it"[35]

**B. Fifth Circuit law does not require "magic words" to establish protected activity**

The District Court's conclusion conflicts with binding Fifth Circuit precedent:

"Magic words are not required. Opposition to conduct reasonably believed to violate Title VII is protected." **Rite Way Services (5th Cir. 2016)**

Opposition is protected if the employee's communication **could reasonably be understood as opposing discriminatory treatment**, even without using legal

[35] ROA. 1097. (Filename: "(App. F, Vol. 6, Ex. 2) - PATTERN OF DISCRIMINATION - Coercion - Retaliation - Physical Violation" p.g. 3)

terms. **Wallace (5th Cir. 2023) A reasonable belief that discrimination occurred is enough. Long v. Eastfield College (5th Cir. 1996)**

FedEx's own company policy repeatedly and specifically intertwines "harassment" and "discrimination" together. The company, FedEx, tells the employee (Sanders) "Reporting harassment = Reporting for Equal Opportunity". Therefore a reasonable employee would believe they were reporting one and the same making Human Resources complaints regarding "harassment". Fifth Circuit precedent, *Long (1996),* established that opposition is protected when an employee reasonably believes she is reporting unlawful discrimination, even if she does not use legal terms. Furthermore, the Defendants-Appellees would have had reasonable belief that Sanders was indeed reporting discriminatory harassment as per their own global company standard. *Hamilton v. Dallas County, No. 21-10133 (5th Cir. 2023)* holds that the terms and conditions of employment are central to Title VII claims. The District Court cannot later penalize and prejudice the Plaintiff-Appellant for using the company's own vocabulary instead of "magic" legal words per *Rite Way*. The District Court required Plaintiff-Appellant's earliest complaints to *explicitly* identify race — a requirement **rejected** by both the Fifth Circuit and the Supreme Court. The District Court's ruling effectively resolved a

disputed factual issue — whether Plaintiff-Appellant's complaints reasonably opposed discrimination — which Fifth Circuit law reserves for the **jury**.

## II. THE COURT ANALYSIS DOES NOT ACCOUNT FOR DIRECT EVIDENCE OF RETALIATION

The District Court does not account for the **direct evidence** filed in ECF Doc 80, including electronic evidence/audio recordings in which the decision-maker (Hersma) makes multiple explicit direct admissions and acknowledges retaliatory motive BEFORE and DURING the promotion decision making process corroborated by the Plaintiff-Appellant's deposition taken under oath[36] and her Unsworn Declaration[37] all of which authenticate the electronic evidence/audio recordings under **Fed. R. Evid. 901(b)(1).**

Under Texas Rule 901(1) Testimony of a Witness with Knowledge is significant testimony that an item is what it is claimed to be proves its authenticity such as with the Audio Recording evidence in this case. Rule 901(a)'s liberal admissibility standard is used in cases involving electronic evidence and these

[36] ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[37] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing")

items are authenticated through witness testimony and circumstantial evidence. According to Texas Rule 1007 Testimony or Statement of a Party to Prove Content (1), the proponent may prove the content of a writing, recording, by the testimony, deposition, or written statement. A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own Direct Testimony as per Texas Rule of Evidence 602 and 401. Before testifying, a witness must give an oath or affirmation to testify truthfully. It must be in a form designed to impress that duty on the witness's conscience as per Rule 603. Both of which were provided twice within the Plaintiff-Appellant's Unsworn Declaration[38] and also repeatedly during the Plaintiff-Appellant's Deposition under the oath[39].

According to 28 U.S.C. § 1746, wherever, under any law of the United States, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same, such matter may, with like

---

[38] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 1, 6)

[39] ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Pages 001)

force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated. If a party presents evidence that is "reducible" to admissible evidence at trial, the party can survive summary judgment. Summary Judgment evidence if it is reducible to admissible evidence at trial will be considered, *Major League Baseball Props. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008).*

Under Fifth Circuit precedent, if a decision-maker (Hersma) explicitly links a negative employment action (denial of promotion) to the filing of HR complaints, that is direct evidence as supported by the Plaintiff-Appellant's testimony under oath and corroborating audio recordings. Supreme Court precedent *Crawford (2009)*, decided that informal complaints are indeed legally protected and that the employer's perception, interpretation, motive, and retaliatory response to an employee's protected activity reinforces and effectively establishes the protected nature of the employee's activities. The Supreme Court emphasized that employer interpretation and response are central to the analysis. Under the binding law of *Crawford (2009),* Hersma's admissions reinforce and establish that the employer (FedEx Office) understood that the Plaintiff-Appellant was engaging in protected

opposition to discriminatory conduct, were a threat to the company, and took adverse actions to retaliate against the Plaintiff-Appellant for her protected activity. Direct evidence of retaliation precludes summary judgment. (*Allen v. USPS*, 63 F.4th 292, 298 (5th Cir. 2023) and creates a genuine dispute of material fact that must be resolved by a jury.

*DIRECT ADMISSIONS BY DEFENDANTS*

## A. RETALIATORY CONTINGENCY

### August 1, 2022 Meeting Between Sanders and Hersma

**Context:** Hersma initiates a meeting with the Plaintiff-Appellant to discuss what he says are her requirements to be approve for a promotion to Lead Consultant (LC).

- On August 1, 2022 - Hersma bribed the Plaintiff-Appellant verbatim, **"in order for me to approve you for any promotions, the HR stuff, that has to stop".**[40]

[40] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

- On August 1, 2022 - Hersma told the Plaintiff-Appellant verbatim AGAIN that he knew she was a "perfect candidate for the role"[41] and he had "no doubts about her ability to do well in the role"[42], but that the role was a "leadership role" that required "maturity" and he considered it a **"sign of maturity"[43]** if she could give him her word that she would **NOT file anymore HR complaints** regarding the continuous workplace violence and workplace harassment.[44]

- Hersma said that he "**needed [the Plaintiff-Appellant's] word on that" in order to approve her request for a promotion and the pay raise that came with it.[45]**

---

[41] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[42] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[43] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[44] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[45] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

- One (1) day after the Plaintiff-Appellant agreed to the terms and conditions of her promotion that "the HR stuff that had to STOP" - On August 2, 2022 - Hersma **immediately** called the Plaintiff-Appellant that **<u>very next day</u>** to congratulate her.[46] He said verbatim, that "Chris [Richardson] and I **decided that [the Plaintiff-Appellant] had <u>NOW</u> earned her promotion**"[47] and he informed her of her pay raise amount.[48]

### B. THE "TWO OPTIONS" ULTIMATUM

**<u>September 9, 2022 meeting between Sanders and Hersma</u>**

- Four (4) **<u>days</u>** after making the Plaintiff-Appellant makes the 3rd Human Resources complaint - Hersma verbalizes retaliatory intent specifically informing the Plaintiff-Appellant that he and Richardson have decided that there are only, "**<u>TWO OPTIONS</u>** if they [Hersma, Richardson, and FedEx Human Resources] **<u>ever</u>** have to hear about any of this [the Human Resources complaints/protected

---

[46] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[47] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[48] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

activities] **<u>ever again</u>** that the Plaintiff-Appellant would face **forcible transfer to a less desirable location** or **having her work hours reduced** altogether **<u>or</u>** she can decided to just **never make anymore HR complaints** about the ongoing violence again **even if it doesn't stop** and **just acquire some thicker skin"**[49]

**<u>October 17, 2022 meeting between Sanders and Hersma</u>**

**<u>(on Audio Recording)</u>**

**FROM PROVIDED AUDIO RECORDING EVIDENCE**

**ROA:** 1097

**Title**: "(App. B, Vol. 2, Ex. 5) - 10-17-22 - Store Manager (Justyn H) Reiterating Threats to me"[50]

**Date of Recording:** 10-17-2022

**Audio Duration:** 0:00 – 19:04

**Context:** When the Appellant sought assistance regarding Barnhill's targeted tormenting which had now escalated to stalking and interrogations of other

[49] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 5)

[50] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 5) - 10-17-22 - Store Manager (Justyn H) Reiterating Threats to me")

coworkers to keep tabs on the Plaintiff-Appellant's whereabouts, Hersma refers back to the previous September ultimatum and explicitly frames the situation AGAIN as having only "**TWO OPTIONS**"—either the Appellant must "put up a wall" and cease reporting the pervasive and steadily escalating harassment issues, or face removal from the workplace via a retaliatory forcible transfer.

**[At Audio Timestamp: 06:52 – 07:40][51]**

> **HERSMA TO APPELLANT:** …it is your perception of it. Part of it is probably you haven't been as exposed to a variety—a variety of different people. I mean, I can give you horror stories about people's perceptions from what I did.
>
> **APPELLANT TO HERSMA:** But she's too fixated on me…I'm creeped out by it.
>
> **HERSMA TO APPELLANT:** …So there's two ways to fix that—one of two ways. What do you think those are? Problem solve with it.
>
> **APPELLANT TO HERSMA:** I'm just—I'm not the instigator. I—

[51] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 5) - 10-17-22 - Store Manager (Justyn H) Reiterating Threats to me")

**HERSMA TO APPELLANT:** That wasn't my question. There's two ways to deal with it. What do you think they are?

**APPELLANT TO HERSMA:** I think you said before: shorten the hours or transferring somebody?

**HERSMA TO APPELLANT:** Somebody gets transferred, or you put up a Keica-wall…[**At Timestamp: 11:00 – 12:37**][52]…I'm not going to let somebody else affect how I'm feeling. Period. You are in charge of that….You can either choose to let it bother you, or you choose to let it go. I know—I know which one's a lot easier. Well, it's harder, but it's better. Do you want to feel like this about those situations?

**APPELLANT TO HERSMA:** No, I want them to stop. I want to feel like she's not always trying to come after me in some sort of a way.

**HERSMA TO APPELLANT:** That is, again, that's completely within your control…this is something you're going to have to acquire some thicker skin."

[52] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 5) - 10-17-22 - Store Manager (Justyn H) Reiterating Threats to me")

**[At Audio Timestamp: 09:45 – 10:00]**[53]

> **HERSMA TO APPELLANT:** "Comparatively speaking, it's—it's like a two from what I've been accustomed to... You have to learn to adapt to those different individuals."

**[At Audio Timestamp: 13:50 – 14:57]**[54]

**Context:** Hersma further suggested that the Appellant should "mute" the harassment rather than expect management to intervene and stop the conduct.

> **HERSMA TO APPELLANT:** "There's a mute button when that soundwave comes in, there's a mute button. Just because that's easier for me. Because I'm not going to let it ruin my day...but it's going to come to the point of: Do you want it to bother you, or you just don't want it to? Because it's not—let's say it [the harassment] doesn't stop. There's still those two options. Does that make sense?

[53] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 5) - 10-17-22 - Store Manager (Justyn H) Reiterating Threats to me")

[54] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 5) - 10-17-22 - Store Manager (Justyn H) Reiterating Threats to me")

**APPELLANT TO HERSMA:** I feel like there's still another option at a point where it's like a person's not supposed to continuously be up against you trying to get somebody in trouble at work.

**HERSMA TO APPELLANT:** I—again, we haven't had that come up anywhere other than you. That's the problem. So, what you're doing to isolate that and then maintain that deal [**TWO OPTIONS Ultimatum**] is the best route you can go.

**November 2, 2022 Meeting between Sanders, Hersma, and Richardson (on Audio Recording)**

**FROM PROVIDED AUDIO RECORDING EVIDENCE**

**ROA:** 1097

**Title**: "(App. B, Vol. 2, Ex. 6) - 11-2-22 - District Manager (Chris R) Says I am Required to Endure Abuse - giving me warnings"[55]

**Date of Recording:** 11-2-2022

**Audio Duration:** 0:00 – 17:59

---

[55] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 6) - 11-2-22 - District Manager (Chris R) Says I am Required to Endure Abuse - giving me warnings")

**Context:** On November 2, 2022, Richardson and Hersma convened a meeting specifically to address the Plaintiff's ongoing reports of workplace hostility. During this meeting, Richardson frames the Plaintiff-Appellant's participation in protected activities in response to the pervasive discriminatory harassment as an inconvenient "sidebar" to the store's operations (not as a matter of Title VII compliance or employee safety). Richardson reinforced the retaliatory intent that the Plaintiff-Appellant only had **two choices: be harassed or be punished.**

**[At Timestamp: 03:00 – 03:50]**[56]

> **RICHARDSON TO APPELLANT:** I'm just going to be honest with you: I can't have two team members that can't work together at the same store…I mean, you've got to understand from a business point of view, that doesn't make any sense….I don't want this sidebar that's taking up so much time to keep interfering with it. Because we've got to get past this one way or the other.

**Context**: Both Richardson and Hersma's numerous clear references to "**TWO OPTIONS**" is not a neutral suggestion for conflict resolution; rather, it

[56] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 6) - 11-2-22 - District Manager (Chris R) Says I am Required to Endure Abuse - giving me warnings")

confirms that the only way for the Plaintiff-Appellant to maintain her current employment status was to forfeit her right to report pervasive discriminatory workplace harassment and in the face of discriminatory harassment just refrain from making reporting to HR and "acquire thicker skin"[57].

### C. HERSMA'S LACK OF DENIAL REGARDING RETALIATORY PROMOTION CONTINGENCY

**December 19, 2022 Meeting Between Sanders and Hersma**

**(on Audio Recording)**

**FROM PROVIDED AUDIO RECORDING EVIDENCE**

**ROA:** 1097

**Title**: "(App. B, Vol. 2, Ex. 3) - 12-19-22 - HR (Joseph D.) Tells Me Not to Discuss UNWANTED TOUCHING with Assistant Manager (II)"[58]

**Date of Recording:** 12-19-2022

**Audio Duration:** 0:00 – 26:29

[57] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 5) - 10-17-22 - Store Manager (Justyn H) Reiterating Threats to me" [At Timestamp: 11:00 – 12:37])

[58] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 3) - 12-19-22 - HR (Joseph D.) Tells Me Not to Discuss UNWANTED TOUCHING with Assistant Manager (II)")

**Context:** During a discussion regarding the escalation of the harassment to unwanted touching, the Appellant notes that management had previously characterized the act of filing complaints as a lack of "maturity" directly correlated with her eligibility to receive the promotion to Lead Consultant (LC). The Plaintiff describes to Hersma the chilling effect the threat has had on her willingness to report the continued discriminatory harassment incidents. Hersma's responses do **not** deny this retaliatory contingency took place during the promotion process

**[At Timestamp: 14:35 – 17:26]**[59]

> **APPELLANT TO HERSMA:** …Kecia jabbed me in the ribs the other day….Jabbed me in the ribs with her fingers. And I just don't think that—I mean, it's not—it's not necessary….And she did it under the guise of trying to get my attention about something, but it wasn't necessary. She knows my name, I've never ignored her, she can talk to me. There's no need to be poking at me and jabbing at my ribs. There's no need to be coming in contact with me and physical contact with me.

---

[59] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 3) - 12-19-22 - HR (Joseph D.) Tells Me Not to Discuss UNWANTED TOUCHING with Assistant Manager (II)")

**HERSMA TO APPELLANT:** Why—why did you not report that right away?

**APPELLANT TO HERSMA:** Because I—I'm getting the sense that every time I complain now, it's becoming to the point that almost like I—I know that Chris [Richardson] wanted to move on, and I know that even when—even when I was going to be getting my promotion to LC, it was kind of like to do this is almost like a sign of maturity, almost, not to continue complaining about her behavior towards me.

**HERSMA TO APPELLANT:** Well the first three times we had to go through this we didn't have anything.

### D. PLAINTIFF EXPRESSES KNOWLEDGE OF JEOPARDY FROM RICHARDSON FOR REPORTING TO FEDEX HUMAN RESOURCES

**December 19, 2022 Meeting Between Sanders and Joesph Davison - FedEx Human Resources Representative (on Audio Recording)**

**FROM PROVIDED AUDIO RECORDING EVIDENCE**

**ROA:** 1097

**Title**: "(App. B, Vol. 2, Ex. 8) - 12-19-22 - HR (Joseph D.) Tells Me Not to Discuss UNWANTED TOUCHING with Assistant Manager (Stewart W.)"[60]

**Date of Recording:** 12-19-2022

**Audio Duration:** 0:00 – 16:02

During a recorded phone conversation detailing a physical assault ("jabbing in the ribs") on workplace property, the Plaintiff-Appellant explicitly notes again that the retaliatory admissions by both Richardson and Hersma have caused her to understand that her continued employment status is inherently linked to not participating in protected activities despite the discriminatory harassment still escalating to the point of unwanted touching and continuing to the point that it is effect her ability to do her job.

**[At Timestamp: 03:14 – 06:02][61]**

> **DAVISON (FEDEX HR REP) TO APPELLANT:** "Why did you wait to report it [the unwanted touching]?"

---

[60] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 8) - 12-19-22 - HR (Joseph D.) Tells Me Not to Discuss UNWANTED TOUCHING with Assistant Manager (Stewart W.)")

[61] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 8) - 12-19-22 - HR (Joseph D.) Tells Me Not to Discuss UNWANTED TOUCHING with Assistant Manager (Stewart W.)")

**APPELLANT TO DAVISON (FEDEX HR REP):** "I felt like it's getting to the point where I don't think feel like I'm being heard. People are listening, but I feel like the magnitude of it is just not being understood for some reason and I feel like you know — people [Richardson] wanna move on from it — so I just feel like almost like if whatever happens should I complain? And I end up second guessing myself because even with something like this where I have had to experience the unwanted touching and can I pass this on or am I going to be like annoying people [Richardson]?…It's emotionally taxing. It's stressful. It's just—it's a lot."

## E. WITNESS CORROBORATION OF MANAGEMENT'S FALSE NARRATIVE

### December 17, 2022 Meeting Between Sanders and Wertenberger - Assistant Manager (on Audio Recording)

**FROM PROVIDED AUDIO RECORDING EVIDENCE**

**ROA:** 1097

**Title**: "(App. B, Vol. 2, Ex. 7) - 12-17-22 - Assistant Manager (Stewart W.) Admitting District Manager (Chris R.) and HR INTENTIONALLY MISLED everyone about the harassment"[62]

**Date of Recording:** 12-17-2022

**Audio Duration:** 0:00 – 18:01

**Context**: In a conversation with a Assistant Manager (Stewart Wertenberger), Wertenberger revealed to the Plaintiff-Appellant that both Richardson and Hersma had characterized the months long ongoing conflict to several other staff members as a "one-sided mystery" that made the Plaintiff-Appellant appear as an instigator of continuous problems.

**[At Timestamp: 04:42 – 06:02]**[63]

**APPELLANT TO WERTENBERGER:** "It does feel like targeting. It's too much. I've told—I've told—I've told everyone everything"

[62] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 7) - 12-17-22 - Assistant Manager (Stewart W.) Admitting District Manager (Chris R.) and HR INTENTIONALLY MISLED everyone about the harassment")

[63] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 7) - 12-17-22 - Assistant Manager (Stewart W.) Admitting District Manager (Chris R.) and HR INTENTIONALLY MISLED everyone about the harassment")

**WERTENBERGER TO APPELLANT:** When you put it that way, I've never heard this—this side of the tale for whatever reason. That would have some helpful things to know in the past. Its all been pitched as very one-sided….I kind of thought you were just taking things wrong, but I'm hearing what you're saying now and I guess that's not the case."

**[At Timestamp: 09:25 – 11:48]**[64]

**APPELLANT TO WERTENBERGER:** It does seem out of hand. It's—it's escalating. Because now she's [Barnhill] coming in physical contact with me. I don't—and then, you know, with the staring, I feel like that's like an intimidation tactic. It's—it's kind of threatening in a way, and it makes me just like—am I even, you know, safe being around her? It's just—it's growing."

**WERTENBERGER TO APPELLANT:** "Wow. Ok. I've never heard your side of these terms before. It's a shame its taken so long.

---

[64] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 7) - 12-17-22 - Assistant Manager (Stewart W.) Admitting District Manager (Chris R.) and HR INTENTIONALLY MISLED everyone about the harassment")

**APPELLANT TO WERTENBERGER:** "Nobody shared that [the extent of the harassment] with you or Marcus [second Assistant Manager Marcus Hurley]?"

**WERTENBERGER TO APPELLANT:** "The conversations that, you know, go down, everything's just pitched as this big mystery….It's all been very put together….I don't think its really gone your way unfortunately."

## III. THE COURT DID NOT APPLY RULE 56 CORRECTLY TO PLAINTIFF-APPELLANT'S EVIDENCE

The Court notes the flash drive was filed, but does not evaluate its contents. Under controlling law: Rule 56(c)(2) Evidence is acceptable if it "can be presented in admissible form at trial." *Maurer v. Independence Town (5th Cir. 2017), Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003), Lee v. Offshore Logistical & Transp., LLC, 859 F.3d 353, 355 (5th Cir. 2017); LSR Consulting, LLC v. Wells Fargo Bank, N.A., 835 F.3d 530, 534 (5th Cir. 2016)*. Evidence need not be authenticated at summary judgment. Per *Patel v. Texas Tech Univ. (5th Cir. 2021)* Pro se evidence must be construed **liberally** in the summary-judgment posture.

First-hand testimony provided within the Plaintiff-Appellant's Unsworn Declaration and Deposition taken under oath are personal knowledge sourced, first-hand witness testimony to which she is competent to testify. *Kapetanovich v. Rockwell Int'l, Inc., (3d Cir. July 15, 1992)*. It is reasonably clear that (witnesses' first-hand testimony) will be available at trial. *Id*.; *Eisenstadt v. Centel Corp., 113 F.3d 738, 742 (7th Cir. 1997)*.

According to Texas Rule of Evidence 902, the electronic evidence/audio recordings were already presumed as authenticated even without a method of final certification and the opposing party did NOT question the authenticity of the electronic evidence nor did they request any method that would have certified the material in any other way. The Audio Recordings are dated, the contents verified within the Plaintiff-Appellant's Unsworn Declaration, and the Native format was supplied to the Defendants-Appellees during the Discovery phase with the Metadata of when the Audio Recordings were recorded. "The majority of circuits interpret C*elotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)* to permit consideration of evidence submitted at summary judgment in non-admissible form when the evidence 'will be reduced to admissible form at trial.'" (*McMillian v. Johnson*, 88

F.3d 1573, 1584 (11th Cir. 1996); *J F Feeser, Inc v. erv-A-Portion, Inc (909 F.2d 1524) (3d Cir. 1990)*; *Garside v. Osco Drug, Inc*, F.2d 46 (1st Cir. 1990).

## IV. THE COURT'S RULING RELIES ON A MATERIAL FACTUAL ERROR REGARDING THE TIMING OF THE PROMOTION

The District Court mistakingly found the Plaintiff-Appellant's promotion occurred **before** the retaliation, undermining causation. This is entirely **incorrect** and contradicted by direct, recorded material evidence provided to the court. The Plaintiff's Motion for Summary Judgement Docket No. 51.

> *From Page 24 of the Magistrate Judge's Recommendation that led to the District Court's Final Judgment it states;* "But by that time, Hersma allegedly told Sanders to stop making her complaints. This happened on August 1, 2022. ECF No. 72 at 8. And, Sanders had applied for and already received her promotion to Store Lead Consultant at the Gaylord Texan store." - Docket No. 76 pg. 24[65]

[65] ROA. 1058. (Findings, Conclusions, Recommendations of The United States Magistrate Judge)

This is inaccurate, conflicts with the Record, and undermines the evidence of admitted retaliatory intent of the Defendants-Appellees.

- August 1, 2022 - Hersma informed the Plaintiff-Appellant of the retaliatory contingency that “the HR stuff, that has to stop” in order to receive her promotion[66]
- August 1, 2022 - The Plaintiff-Appellant is coerced into agreeing to the terms and conditions to finally get her promotion[67]
- August 2, 2022 - Hersma informs the Plaintiff-Appellant that he and Richardson have decided that she had “now earned her promotion” and informed her of her pay raise[68]
- August 8, 2022 - The Plaintiff-Appellant is promoted to Lead Consultant after agreeing to retaliatory contingency[69]

---

[66] ROA. 1097. (Filename: “((App. C, Vol. 3, Ex. 1) - Plaintiff’s Deposition Transcript (Page 143: Line: 23”); ROA. 632.

[67] ROA. 1097. (Filename: “((App. C, Vol. 3, Ex. 1) - Plaintiff’s Deposition Transcript (Page: 144 Line: 1-13)”); ROA. 632.

[68] ROA. 1097. (Filename: “((App. C, Vol. 3, Ex. 1) - Plaintiff’s Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)”); ROA. 632.

[69] ROA. 1097. (Filename: “((App. C, Vol. 3, Ex. 1) - Plaintiff’s Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)”); ROA. 632.

The retaliation and coercion occurred BEFORE and DURING the promotion decision making process. The Fifth Circuit court has ruled that cases recognizing motive disputes belong to juries, *Porter v. Houma Terrebonne Hous. Auth., No. 14-31090 (5th Cir. 2015).*

## SEQUENCE OF EVENTS AND CASUAL CONNECTIONS FROM THE RECORD

1. By January 28, 2022 the Plaintiff-Appellant ("Ivana Sanders") who is African-American worked for FedEx Office at the Gaylord Texan Resort and Convention Center in Grapevine, TX (Store #5518 known as the "FedEx Gaylord") for well over six (6) months as a regular entry level Store Consultant.[70]

2. Six (6) months of employment is the standard length of employment necessary to be eligible to receive a promotion to Lead Consultant (LC) at FedEx Office. A FedEx Office Lead Consultant handles specialized daily work responsibilities including: managing and formatting print production, signage, graphics, e-commerce orders for large and small order volume, mastering digital imaging

[70] ROA. 458.

software, coordinating delivering of signage and print production orders, generating and proving print production quotes for customers and clients, and inspecting print production material for quality control, and training other team members on print production formatting[71]

3. By January 28, 2022 despite only being a Store Consultant, the Plaintiff-Appellant's assigned daily work responsibilities by management are those that an employee in the higher position of a Lead Consultant would be normally doing[72]

4. The FedEx Gaylord did not have an employee in their open Lead Consultant position; which is unusual as FedEx Office with a large order volume like the FedEx Gaylord would need a Lead Consultant. Management had the Plaintiff-Appellant hey needed someone to acting in the role.[73]

5. Early January 2022, the Plaintiff-Appellant asked management if she could be considered for a promotion to Lead Consultant as she was trained for the role and already handled the tasks for the role on a daily basis. Store Manager

[71] ROA. 458.

[72] ROA. 458.

[73] ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 183: Lines: 5-25, Page: 184 Lines: 1-4); ROA. 642.

(Hersma-Appellee) told the Plaintiff-Appellant she was "the perfect candidate for the role"[74]

6. On March 16, 2022 - the Plaintiff-Appellant after experiencing longterm pervasive harassment by a white female coworker (Barnhill), filed a Human Resources complaint to FedEx Human Resources and her direct management regarding conduct she reasonably believed to be discriminatory.[75]

7. Suddenly FedEx management no longer treated the Plaintiff-Appellant as the next Lead Consultant, all talks regarding her promotion ceased. Management, on a daily basis, still required the Plaintiff-Appellant to handle the responsibilities and tasks associated with someone who **is** a Lead Consultant, **not** a simple Store Consultant still **without allowing her to actually be promoted** to the role **or** receive the pay raise that came with it.[76]

---

[74] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 1)

[75] ROA. 460.

[76] ROA. 460.

8. By April 25, 2022 - District Manager, Chris Richardson (Defendant-Appellee) replaces the Plaintiff-Appellant for the promotion to Lead Consultant with a white male coworker who she was of equal qualification[77]

9. Less than one (1) month after participating in a legally protected activity the Plaintiff-Appellant who was more than qualified for the promotion to Lead Consultant, was passed over for the promotion to Lead Consultant, and replaced for the promotion with a white male coworker who she was equal qualifications with at the instruction of Richardson-Appellee[78]

10. May 25, 2022 - The discriminatory harassment by Barnhill continued so the Plaintiff-Appellant filed a 2nd Human Resources complaint that she is experiencing “workplace harassment”.[79] The Plaintiff-Appellant’s complaint informed Human Resources that the harassment is causing her to fear for her safety and wellbeing and have anxiety coming into work.[80]

---

[77] ROA. 461.

[78] ROA. 462.

[79] ROA. 498.

[80] ROA. 1097. (Filename: “((App. C, Vol. 3, Ex. 1) - Plaintiff’s Deposition Transcript (Page 216: Lines: 11-20, Page: 228 Lines: 14-24); ROA. 650; ROA. 653.

11. Management still takes no action to remedy the situation and responds to the Plaintiff-Appellant with hostility and profanity (examining angrily and loudly "Goddamn it!") upon the Plaintiff-Appellant presenting the 2nd harassment complaint[81]

12. The Plaintiff-Appellant begins experiencing severe anxiety attacks which cause her throat to close leaving her unable to breathe due to the distress from the harassment and retaliation. The Plaintiff-Appellant forced to call emergency EMT medical attention for the anxiety attacks.[82]

13. One (1) day after filing her 2nd Human Resources complaint on May 26, 2022 - Store manager Hersma separates the Plaintiff-Appellant from the main workplace and reassigns a significant portion of her duties to those of a dock worker[83]

14. July 2022 - a Requisition opens to hire a second Lead Consultant at the FedEx Gaylord, the Plaintiff-Appellant who was still already supporting fulfillment of

[81] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 3)

[82] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 3)

[83] ROA. 463.

large order volume for Print, Signage, Graphics Production at FedEx Gaylord was **never** notified by anyone that she had another opportunity to apply for the promoted position she was already highly qualified for[84]

15. The Plaintiff-Appellant was **never** recommended for the newly opened promotion opportunity to Lead Consultant or offered the position by anyone.[85]

16. July 26, 2022 - The Plaintiff-Appellant discovers on her own that there is an open requisition for a second Lead Consultant. She immediately went to Hersma, and asked if she could be considered for the role given her experience and qualifications to which he still does **not** offer her the promotion. He literally responded by hunching his shoulders and saying, "Anyone can apply."[86]

17. On August 1, 2022 - Hersma asked the Plaintiff-Appellant to meet with him and he informs her verbatim he had "no doubts whatsoever that she had the

---

[84] ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 144: Lines: 10-17); ROA. 463.

[85] ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 144: Lines: 10-17); ROA. 463.

[86] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 3)

ability to do excellent in the role of Lead Consultant"[87] Hersma told the Plaintiff-Appellant that she was indeed being denied promotions and would continue to be denied promotions unless she relinquished her civil right to participate in protected activities.[88]

18. On August 1, 2022 - Hersma bribed the Plaintiff-Appellant verbatim, **"in order for me to approve you for any promotions, the HR stuff, that has to stop".**[89]

19. On August 1, 2022 - Hersma told the Plaintiff-Appellant verbatim AGAIN that he knew she was a "perfect candidate for the role"[90] and he had "no doubts about her ability to do well in the role"[91], but that the role was a **"leadership**

---

[87] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4)

[88] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4)

[89] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[90] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA.1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[91] ROA. 1097 (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA 1097 (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

**role" that required "maturity" and he considered it a "sign of maturity"[92] if she could give him her word that she would NOT file anymore HR complaints** regarding the continuous workplace violence and pervasive discriminatory harassment.[93]

20. Hersma said that he "**needed [the Plaintiff-Appellant's] word on that" [the retaliatory contingency that "the HR stuff, that has to stop"] in order to approve her request for a promotion and the pay raise that came with it.[94]**

21. The Plaintiff-Appellant finally understood the clear terms and conditions of receiving her promotion and pay raise meant that she had to agree to relinquish her right to participate in protected activities. So, the Plaintiff-Appellant agreed to the conditions of the bribe to get her promotion and pay raise.[95]

---

[92] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[93] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[94] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[95] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

22. One (1) day after the Plaintiff-Appellant agreed to the terms and conditions of her promotion that “the HR stuff, that has to STOP” - On August 2, 2022 - Hersma **immediately** called the Plaintiff-Appellant that **very next day** to congratulate her.[96] He said verbatim, that “Chris [Richardson] and I **decided that you [the Plaintiff-Appellant] have NOW earned your promotion**”[97] and he informed her of her pay raise amount.[98]

23. The Plaintiff-Appellant did nothing different between August 1, 2022 and August 2, 2022 other than **agree to the contingency that “the HR stuff that has STOP”** to “earn" this promotion[99]

[96] ROA. 1097. (Filename: “(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing” p.g. 4); ROA. 1097. (Filename: “((App. C, Vol. 3, Ex. 1) - Plaintiff’s Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)”); ROA. 632.

[97] ROA. 1097. (Filename: “(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing” p.g. 4); ROA. 1097. (Filename: “((App. C, Vol. 3, Ex. 1) - Plaintiff’s Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)”); ROA. 632.

[98] ROA. 1097. (Filename: “(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing” p.g. 4); ROA. 1097. (Filename: “((App. C, Vol. 3, Ex. 1) - Plaintiff’s Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)”); ROA. 632.

[99] ROA. 1097. (Filename: “(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing” p.g. 4); ROA. 1097. (Filename: “((App. C, Vol. 3, Ex. 1) - Plaintiff’s Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)”); ROA. 632.

24. On August 8, 2022 - Only after relinquishing her civil right to participate in protected activities, the Plaintiff-Appellant is finally promoted to Lead Consultant.[100]

25. August 29th - September 5, 2022 - The discriminatory harassment from Barnhill escalates to physical acts of aggression on workplace property and physical acts of intimidation causing the Plaintiff-Appellant more fear, the Plaintiff-Appellant files a 3rd Human Resources complaint citing "harassment"[101]

26. Four (4) **days** after making the Plaintiff-Appellant makes the 3rd Human Resources complaint - On September 9, 2022 - Hersma verbalizes retaliatory intent specifically informing the Plaintiff-Appellant that he and Richardson have decided that there are only, "**TWO OPTIONS** if they **ever** have to hear about any of this **ever again** that the Plaintiff-Appellant would face **forcible transfer to a less desirable location** or **having her work hours reduced** altogether **or** she can decided to just **never make anymore HR complaints**

---

[100] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[101] ROA. 524.

about the ongoing violence again **even if it doesn't stop** and **just acquire some thicker skin"**[102]

27. October 17, 2022 - The Discriminatory Harassment escalates further into Stalking and Threatening Aggression from Barnhill causing the Plaintiff-Appellant severe stress. The Plaintiff-Appellant makes a 4th Human Resources complaint citing "being on the receiving end of harassment" and "physical aggression" again.[103] The Plaintiff-Appellant tells Hersma that she will **not** stop making Human Resources complaints, that the harassment is becoming scarier and that it is "creeping [her] out".[104]

28. October 17, 2022 - Hersma again verbalizes retaliatory intent stating verbatim, "Do you want it to bother you, or you just don't want it to? Because…let's say it [the harassment] doesn't stop. There's still those **TWO OPTIONS**. Does that

---

[102] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 5)

[103] ROA. 524.

[104] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 5) - 10-17-22 - Store Manager (Justyn H) Reiterating Threats to me" [At Audio Timestamp: 06:52 – 07:40])

make sense?"[105] (Hersma is referencing directly back to the "**TWO OPTIONS**" laid out by Hersma and Richardson on September 9, 2022).[106]

29. Less than two (2) weeks after telling management that she would continue participating in protected activities - On November 2, 2022 - District Manager Richardson immediately retaliates again giving the Plaintiff-Appellant an **unwarranted negative performance review** that is inaccurate to the work history of the Plaintiff-Appellant and her tangible employment record[107]

30. On November 2, 2022 - Richardson falsely accuses the Plaintiff-Appellant of "abandoning her duties as Lead Consultant"[108]

---

[105] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 6); ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 5) - 10-17-22 - Store Manager (Justyn H) Reiterating Threats to me" [At Audio Timestamp: 13:50 – 14:57])

[106] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 6)

[107] ROA. 483; ROA. 484; ROA 485; ROA. 1097. (Filename: "(App. G, Vol. 7, Ex. 1) - #1 Successful - PACE Employee Review - Annual 6-01-21 - 5-31-22 "Ivana takes a personal interest in taking care of her customers she uses her skills to ensure a positive customer experience""); ROA. 1097. (Filename: "(App. G, Vol. 7, Ex. 2) - #2 Extremely Positive - PACE Employee Review - 12-01-21 - 2-22 "Ivana has grown into her role extremely well""); ROA. 1097. (Filename: "(App. G, Vol. 7, Ex. 3) - #3 Outstanding Customer Service - PACE Employee Review - Fall 9-01-22 - 11-30-22 "The Manager receives numerous compliments in regards to her outstanding customer service"")

[108] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 6)

31. On November 2, 2022 - Richardson **immediately retaliated again** by **bullying** and **humiliating** the Plaintiff-Appellant providing **more Unwarranted Negative Performance Reviews of Plaintiff-Appellant's work ethic and integrity to her peers**: leaving her with a **smeared her reputation** and **isolation from her peers in her workplace**[109]

32. On November 2, 2022 - **Immediately following Richardson's Unwarranted Negative Performance Reviews shared with her peers**, the atmosphere in the FedEx Gaylord **turn hostile towards the Plaintiff-Appellant** and **people begin to avoid interacting with her**.[110]

33. December 17, 2022 - The Plaintiff-Appellant records a conversation with one of her Assistant Managers on audio recording explained that when Richardson came (on November 2, 2022) he and Marcus were **"pitched a very one-sided story"**[111] that painted the Plaintiff-Appellant in a negative light, that she was a habitual liar, a source of endless drama who was wasting everyone's time

[109] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 6)

[110] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 6-7)

[111] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 7) - 12-17-22 - Assistant Manager (Stewart W.) Admitting District Manager (Chris R.) and HR INTENTIONALLY MISLED everyone about the harassment" [At Timestamp: 04:42 – 06:02])

making a series of completely baseless Human Resource complaints for no reason for months.[112]

34. The Discriminatory Harassment escalate further to multiple occurrences of Unwanted Touching by the white female coworker who jabs the Plaintiff-Appellant in the ribs underneath her breasts[113]

35. December 19, 2022 - The Plaintiff-Appellant reports the Unwanted Touching to Hersma.[114] Hersma asks why she waited almost a month to report it to which she responds that **she has gotten the message from management that making HR complaints is <u>not</u> acceptable and that if she makes HR reports <u>she understands that she will get in trouble because that's what everyone keeps reiterating to her even her promotion hinged on taking abuse in silence.[115]</u>**

[112] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 6-7)

[113] ROA. 746-748; Depo. Ex. 16 - SURVEILLANCE VIDEO FOOTAGE (FROM NOVEMBER 28 from Defendants' Brief in Support of Motion for Summary Judgment Docket No. 64)

[114] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 3) - 12-19-22 - HR (Joseph D.) Tells Me Not to Discuss UNWANTED TOUCHING with Assistant Manager (II)")

[115] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 3) - 12-19-22 - HR (Joseph D.) Tells Me Not to Discuss UNWANTED TOUCHING with Assistant Manager (II)" [At Timestamp: 14:35 – 17:26])

**<u>Hersma acknowledges this on audio recordings admitting that it definitely did happen.[116]</u>**

<u>Casual Connections in *Sanders v. Federal Express, et al.*:[117]</u>

- Less than one (1) month between the Plaintiff-Appellant's 1st HR complaint and denial of promotion - (an Adverse Employment Action)[118]
- Less than two (2) months between the Plaintiff-Appellant's 1st HR complaint and being replace for promotion by a different employee she was equally qualified with (Replaced for Promotion - an Adverse Employment Action)[119]
- Less than three (3) months between the Plaintiff-Appellant's 2nd HR complaint and no one in management even telling her about a new promotion opportunity for Lead Consultant at FedEx Gaylord (Failure to Promote - an Adverse Employment Action)[120]

---

[116] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 3) - 12-19-22 - HR (Joseph D.) Tells Me Not to Discuss UNWANTED TOUCHING with Assistant Manager (II)" [At Timestamp: 14:35 – 17:26])

[117] ROA. 473.

[118] ROA. 473.

[119] ROA. 473.

[120] ROA. 473.

- Less than three (3) months between the Plaintiff-Appellant's 2nd HR complaint and Defendants-Appellees admitting that they are withholding her promotion for no other reason than "the HR Stuff that has to STOP" (Withholding a Promotion - an Adverse Employment Action)[121]

- Less than one (1) day after the Plaintiff-Appellant agrees to stop participating in protected activities regardless of the escalating harassment in order to receive her promotion to Lead Consultant she receives a call from Hersma telling her that he and Richardson decided that she "had NOW earned her promotion"[122]

- Less than one (1) week between the Plaintiff-Appellant's 3rd HR complaint and Hersma telling her that he and Richardson agreed that she only had TWO OPTIONS endure the harassment in silence or she participates in any protected activities again and face more Adverse Employment Actions[123]

- Less than one (1) day between the Plaintiff-Appellant's 4th participation in protected activities Hersma reiterates to the Plaintiff-Appellant that he and Richardson agreed that she only had TWO OPTIONS endure the harassment in

[121] ROA. 473.

[122] ROA. 474.

[123] ROA. 474.

silence or she participates in any protected activities again and face more Adverse Employment Actions[124]

- Less than three (3) weeks between the Plaintiff-Appellant's 4th participation in protected activities Richardson provides Unwarranted Negative Performance Reviews of the Plaintiff-Appellant's management of her Lead Consultant responsibilities (Unwarranted Negative Performance Reviews - an Adverse Employment Action)[125]

- Less than three (3) weeks between the Plaintiff-Appellant's 4th participation in protected activities Richardson bullies the Plaintiff-Appellant by providing Unwarranted Negative Performance Reviews of the Plaintiff-Appellant's work ethic and personal characteristics to her peers causing her isolation, humiliation, and opened her up to hostility and further distress (Unwarranted Negative Performance Reviews/Humiliating an Employee as an act of Retaliation - an Adverse Employment Action)[126]

---

[124] ROA. 474.

[125] ROA. 474.

[126] ROA. 474-475.

To establish a *prima facie* retaliation claim under **42 U.S.C. § 1981**, a Plaintiff-Appellant must show that she engaged in protected activity, suffered an adverse employment action, and that a causal connection exists between the two, *Garcia v. Professional Contract Services, Inc., 938 F.3d 236, 241 (5th Cir. 2019); Coleman v. Md. Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010); McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007); *Gorman v. Verizon Wireless Tex., L.L.C., 753 F.3d 165, 170 (5th Cir. 2014)*. The causal connection element by "showing close timing between an employee's protected activity and an adverse action against [her]." *Fiest v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013). "Such temporal proximity must generally be 'very close.'" *Id*. (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). *Gee v. Principi, 289 F.3d. 342, 345 (5th Cir. 2002)* reinforces that the duty of the courts is not to resolve intent disputes at summary judgment and that casual connections preclude Summary Judgment.

## DIRECT ADMISSIONS ARE UNDISPUTED BY DEFENDANTS-APPELLEES

Notably during the entirety of this case the Defendants-Appellees have failed to address Plaintiff-Appellant's central point: The decision maker's (Store Manager Defendant Justyn Hersma's) own admissions linking the Plaintiff-

Appellant's complaints to adverse action. The Plaintiff-Appellant submitted recorded statements in which **Manager Hersma confirmed conditioning promotional approval on the cessation of Plaintiff-Appellant's Human Resources complaints opposing harassment and discrimination.**[127] **Defendants-Appellees do not dispute and have never disputed that these statements were made**[128], nor do they explain why such admissions do not constitute direct evidence of retaliation under *Allen v. U.S. Postal Service, 63 F.4th 292 (5th Cir. 2023)*.

These Defendants-Appellees cannot plausibly argue that they retaliated *because of complaints* while simultaneously maintaining that those complaints were not understood as protected opposition. **Defendants-Appellees' silence on this point underscores the need for the Summary Judgment to be reversed.** The Defendants-Appellees' silence regarding these numerous direct admissions of Retaliatory intent leaves — and has always left — the legal error on which this appeal is being brought on unaddressed, undisputed, and unchallenged.

---

[127] ROA. 1097. (Filename: "(App. B, Vol. 2, Ex. 3) - 12-19-22 - HR (Joseph D.) Tells Me Not to Discuss UNWANTED TOUCHING with Assistant Manager (II)" [At Timestamp: 14:35 – 17:26])

[128] ROA. 1176.

## SUMMARY OF THE ARGUMENT

This Court reviews a grant of summary judgment *de novo*. Summary Judgment is proper only where "there is no genuine dispute as to any material fact." **Fed. R. Civ. P. 56(a).** The District Court improperly granted Summary Judgment by: resolving factual inferences against Plaintiff-Appellant; failing to credit direct evidence of repeatedly expressed retaliatory intent through direct admissions by the decision-maker, Hersma, and his manager, Richardson; the decision makers' combined reasonable understanding that the Plaintiff-Appellant was opposing discrimination; and relies on an incorrect sequence of pertinent events. Rather than determining whether a reasonable jury could conclude that Plaintiff-Appellant engaged in protected opposition, the District Court improperly characterized Plaintiff-Appellant's complaints as merely describing "antisocial behavior." This characterization constitutes an impermissible weighing of evidence.

# ARGUMENT

## *I. Core Legal Error*

The District Court granted summary judgment based on the conclusion that Sanders did not engage in protected activity. That conclusion rests on an unduly narrow interpretation of what constitutes opposition to discrimination. Federal law does not require employees to invoke specific legal terminology when reporting discriminatory conduct, *Crawford (2009)*.

## *2. Evidence the Court Overlooked*

The record reflects that Sanders repeatedly reported harassment through FedEx's Human Resources channels, conduct that FedEx policy itself treats as discrimination-related misconduct and part of their Equal Opportunities structure. The Plaintiff-Appellant presented direct evidence, including electronic evidence/ audio recordings, of retaliatory intent by the Defendants-Appellees and provided first-hand testimony under oath to corroborate that evidence as well as an Unsworn Declaration all of which can be converted to admissible evidence at trail therefore precluding Summary Judgment.

### ***3. Decision-Maker Admissions***

Most significantly, the decision-maker (Hersma) acknowledged that he made promotions and pay raises contingent upon the Plaintiff-Appellant ceasing making Human Resources complaints, warned her that “the HR stuff, that has to stop” if the Plaintiff-Appellant expected any advancement. The decision-maker, Hersma, admitted that he and Richardson decided there are only, “<u>**TWO OPTIONS**</u> if they <u>**ever**</u> have to hear about any of this <u>**ever again**</u> that the Plaintiff-Appellant would face **forcible transfer to a less desirable location** or **having her work hours reduced** altogether <u>**or**</u> she can decided to just **never make anymore HR complaints** about the ongoing violence again **even if it doesn’t stop** and **just acquire some thicker skin”**. Such statements permit a reasonable jury to conclude that management understood Sanders’s complaints as opposition to discrimination, *Porter (5th Cir. 2015)***.** This is even more plausible in light of the FedEx Global policy which lists “harassment” under it “Anti-Discrimination" umbrella and goes even further to list “harassment” as a “form of discrimination”. The employer, themselves, use interchangeable terminology within their own EEO policy for “discrimination” and “harassment”. The District Court did not properly credit the evidence and instead adopted Defendant’s interpretation of Plaintiff-Appellant’s

complaints. This was a legal error. When competing interpretations of evidence exist, summary judgment is inappropriate, *Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000).*

***4. Summary Judgment Standard***

The Court must view all evidence and draw all reasonable inferences in favor of the non-moving party and may not weigh evidence or resolve factual disputes. At summary judgment, the court's role is not to decide whether Plaintiff-Appellant's interpretation is more persuasive, but whether a reasonable jury could adopt Plaintiff-Appellant's interpretation. A reasonable jury could conclude that Plaintiff-Appellant's complaints alerted management to perceived discriminatory conduct, particularly where the decision-maker (Hersma and Richardson's) own admissions reflect retaliatory motive and evidence of the Defendant's direct admissions submitted were provided to the court record with numerous Audio Recordings, the Plaintiff-Appellant's Deposition under oath, the Plaintiff-Appellant's Sworn Declaration, and the Defendants-Appellees consistent lack of disputing the fact of these admissions. At minimum, this evidence creates a genuine dispute of material fact. **Tolan v. Cotton, 572 U.S. 650, 656–57 (2014).** In

*City of Keller*, the supreme court determined that a matter is conclusively established if reasonable people could not differ concerning the conclusion to be drawn from the evidence *City of Keller v. Wilson,* 168 S.W.3d 816 (Tex. 2005). When deciding these matters the court considers "the evidence as a whole" and asks whether a reasonable jury could draw an inference of retaliation. *King v. Ford Motor Co*., 872 F.3d 833 (7th Cir. 2017). Summary judgment is improper where the evidence permits differing reasonable interpretations, **Anderson (1986).**

Here, the evidence permits a reasonable jury to conclude that:

- Plaintiff-Appellant engaged in protected opposition;
- The decision-makers, Hersma and Richardson, understood Plaintiff-Appellant's opposition as opposing discrimination;
- The Defendants admittedly acted with retaliatory intent;
- The Defendants respond to the Plaintiff-Appellant's protected conduct with adverse actions.

Because a reasonable jury could find that Sanders engaged in protected opposition activity and suffered retaliation, the judgment should be reversed, and the case remanded for trial.

BUT-FOR CAUSATION

The "Two Options" ultimatum functions as core evidence of a retaliatory policy verbalized in clear terms by FedEx management (Hersma and Richardson) to the plaintiff demonstrates both retaliatory intent and "but-for" causation. The "Two Options" ultimatum supports that management viewed the Plaintiff's protected activity as a terminable offense.

The Plaintiff-Appellant must show that retaliation was a "but-for" cause of the adverse action, i.e., that the adverse action would not have occurred in the absence of the retaliatory motive. *Zann Kwan v. Andalex Grp. LLC,* 737 F.3d 834, 845 (2d Cir. 2013) Retaliation must be a "but-for" cause of the employer's adverse action, *Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015)*, it need not be the only but-for cause. "[A] Plaintiff can indirectly establish a causal connection to support a…retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." The causal connection needed for a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action. *Summa v. Hofstra Univ., 708 F.3d at 127-28 (2d Cir. 2013)*; *Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009)*. To establish the causation element, the Plaintiff-

Appellant must present either "direct evidence of retaliation," or "circumstantial evidence creating a rebuttable presumption of retaliation." *Washburn v. Harvey, 504 F.3d 505, 510 (5th Cir. 2007)*.

## CONCLUSION

The District Court improperly resolves factual inferences, weighed evidence, and did not view evidence in the light most favorable to the non-movant. The record contains sufficient evidence for a reasonable jury to find retaliation, particularly in light of decision-maker admissions reflecting retaliatory intent. The District Court improperly granted summary judgment.

Plaintiff-Appellant respectfully requests that this Court:

• Reverse the District Court's judgment; and

• Remand the case for trial.

Dated: April 29, 2026

Respectfully Submitted,

*/s/ Ivana Sanders*

PRO SE PLAINTIFF-APPELLANT

**CERTIFICATION OF SERVICE**

This is to certify that on the day of Wednesday April 29, 2026, the foregoing PLAINTIFF-APPELLANT'S OPENING BRIEF was filed electronically and that it is available for viewing and downloading on the Fifth Circuit Court's CM/ECF system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

Respectfully Submitted,

*/s/ Ivana Sanders*

PRO SE PLAINTIFF-APPELLANT

## CERTIFICATE OF COMPLIANCE

Pursuant to 5TH CIR. R. 32.2.7(c), undersigned counsel certifies that this brief complies with the type-volume limitations of 5TH CIR. R. 32.2.7(b).

1. Exclusive of the portions exempted by 5TH CIR. R. 32.2.7(b)(3), this brief contains **9954** words printed in a proportionally spaced typeface.

2. This brief is printed in a proportionally spaced, serif typeface using Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes.

3. Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4. Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5TH CIR. R. 32.2.7, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

Respectfully Submitted,

*/s/ Ivana Sanders*

PRO SE PLAINTIFF-APPELLANT