Case No. 26-10182

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

IVANA SANDERS,

Plaintiff – Appellant

v.

Christian Richardson, District Manager; Justyn Hersma, Store Manager (Former); FedEx Office & Print Services, Incorporated,

Defendants – Appellees

On Appeal from the United States District Court
for the Northern District of Texas
No. 4:24-cv-00333

**BRIEF OF APPELLEES**
**FEDEX OFFICE AND PRINT SERVICES, INC., CHRIS RICHARDSON, JUSTYN HERSMA**

Eva W. Turner
Texas Bar No. 24051485
eva.turner@ogletree.com
Shaina E. Hicks
Texas Bar No. 24139802
shaina.hicks@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
Preston Commons West
8117 Preston Road, Suite 500
Dallas, Texas 75225
214.987.3800 (Phone)
214.987.3927 (Fax)
**ATTORNEYS FOR DEFENDANTS-APPELLEES**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| **Appellees:** | **Counsel for Appellees:** |
|---|---|
| FedEx Office and Print Services, Inc.<br>Christian Richardson<br>Justyn Hersma | Eva W. Turner of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. Dallas, TX |
| | Shaina E. Hicks of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. Dallas, TX |

| **Appellant:** | **Counsel for Appellant:** |
|---|---|
| Ivana Sanders | None |

*/s/ Shaina E. Hicks*
Attorney of record for Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Because this appeal involves the application of well-established law, oral argument is unnecessary to aid the Court's decisional process. Indeed, the dispositive issues on appeal—whether certain of Appellant Ivana Sanders' workplace complaints constituted protected activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Texas Commission on Human Rights Act and whether the district court properly considered the record evidence and applied the summary judgment standard—have been authoritatively decided by this Court. Therefore, the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS ..... ii

STATEMENT REGARDING ORAL ARGUMENT ..... iii

TABLE OF AUTHORITIES ..... vi

I. JURISDICTIONAL STATEMENT ..... 1

II. STATEMENT OF THE ISSUES ..... 2

III. STATEMENT OF THE CASE ..... 3

A. The Factual Record ..... 3

B. Procedural History ..... 7

IV. SUMMARY OF THE ARGUMENT ..... 10

V. ARGUMENT ..... 12

A. Standard of Review ..... 12

1. The District Court Correctly Determined that Sanders Failed to Engage in Protected Activity Prior to her Promotion to Store Lead Consultant ..... 14

a. The "Reasonable Belief" Standard Does Not Rescue Sanders' Pre-Promotion Complaints ..... 18

b. FedEx Office's Internal Policies Do Not Transform General Workplace Complaints into Protected Activity ..... 20

2. The District Court Properly Considered and Rejected Sanders' Purported "Direct Evidence" of Retaliation ..... 22

a. The Audio Recordings Are Not Authenticated and Cannot Defeat Summary Judgment ..... 22

b. Even if Authenticated, Hersma's Alleged Statements Do Not Constitute Direct Evidence of Retaliation ....24

c. Sanders Failed to Properly Present Her Alleged Evidence to the District Court, and Even After the Court Received It, the Evidence Did Not Create a Genuine Issue of Material Fact ....27

3. The District Court Correctly Applied the Summary Judgment Standard ....29

a. The Alleged Factual Error Regarding Promotion Timing is Immaterial ....31

VI. CONCLUSION ....33

CERTIFICATE OF SERVICE ....34

CERTIFICATE OF COMPLIANCE ....35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. U.S. Postal Service*,
63 F.4th 292 (5th Cir. 2023) ....................12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................13, 30

*Arora v. Starwood Hotels & Resorts Worldwide, Inc.*,
294 Fed. Appx 159 (5th Cir. 2008)....................18

*Brown v. Wal-Mart Stores E., LP*,
969 F.3d 571 (5th Cir. 2020) ....................14

*Byers v. Dallas Morning News, Inc.*,
209 F.3d 419 (5th Cir. 2000) ....................18

*Douglass v. United Servs. Auto. Ass'n*,
79 F.3d 1415 (5th Cir. 1996) ....................13, 30

*EEOC v. Rite Way Service, Inc.*,
819 F.3d 235 (5th Cir. 2016) ....................8, 11

*Harris-Childs v. Medco Health Sols., Inc.*,
169 Fed. Appx 913 (5th Cir. 2006)....................16, 17, 18

*Little v. Liquid Air Corp.*,
37 F.3d 1069 (5th Cir. 1994) ....................13, 30

*Long v. Eastfield Coll.*,
88 F.3d 300 (5th Cir. 1996) ....................19, 20

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)....................14

*Moore v. United Parcel Serv., Inc.*,
150 Fed. Appx 315 (5th Cir. 2005)....................16, 17, 20

*Robinson Prop. Grp., L.P. v. Mitchell*,
427 F.3d 987 (5th Cir. 2005) ....................25

*Taliaferro v. Lone Star Implementation & Elec. Corp.*,
693 Fed. Appx 307 (5th Cir. 2017)......18

*United States v. Johnson*,
943 F.3d 214 (5th Cir. 2019)......23, 32

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013)......14

*Wallace v. Performance Contractors, Inc.*,
57 F.4th 209 (5th Cir. 2023)......8, 19, 21

*Yarbrough v. SlashSupport, Inc.*,
152 F.4th 658 (5th Cir. 2025)......16, 17, 18, 19, 24

**Statutes**

28 U.S.C. § 1291......1

28 U.S.C. § 1331......1

28 U.S.C. § 1367......1

42 U.S.C. § 1981......iii, 2, 8, 14

42 U.S.C. §§ 2000e......21

**Other Authorities**

Fed. R. App. P. 32(a)(5)......35

Fed. R. App. P. 32(a)(6)......35

Fed. R. App. P. 32(a)(7)(B)......35

Fed. R. Civ. P. 56(a)......13, 30

Fed. R. Civ. P. 12(b)(6)......7

Fed. R. Civ. P. 56......2, 9

Fed. R. Civ. P. 56(c)(2)......22, 24

Fed. R. Civ. P. 59(e)......1, 8, 31

Fed. R. Evid. 901(a) ........................................ 23

Fed. R. Evid. 901(b) ........................................ 23

## I. JURISDICTIONAL STATEMENT

The district court had jurisdiction over Appellant Ivana Sanders' claims under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction). This Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291 because the appeal is taken from a final judgment disposing of Sanders' claims with prejudice, entered by the district court on December 2, 2025, and from the district court's order denying Sanders' motion under Federal Rule of Civil Procedure 59(e), entered on February 18, 2026.

## II. STATEMENT OF THE ISSUES

Construing Sanders' brief generously, Appellees' understanding is that Sanders intends to present four concrete issues for review:

1. Whether the district court correctly concluded that Sanders' pre-promotion workplace complaints constituted protected activity under Title VII, Section 1981, or the TCHRA?

2. Whether the district court properly considered and rejected Sanders' purported "direct evidence" of retaliation?

3. Whether the district court correctly applied the summary judgment standard under Federal Rule of Civil Procedure 56 in granting Appellees' Motion for Summary Judgment and denying Sanders' Motion for Summary Judgment?

4. Whether the district court erred in granting Appellees' Motion for Summary Judgment?

# III. STATEMENT OF THE CASE

## A. The Factual Record.

This is an employment retaliation case. Plaintiff-Appellant Ivana Sanders, a former Store Lead Consultant at the FedEx Office store located inside of the Gaylord Texan Resort in Grapevine, Texas, alleges that Defendants-Appellees retaliated against her by withholding a promotion because she filed workplace complaints about a co-worker named Kecia Barnhill.

Sanders worked alongside Barnhill, and the two developed a difficult interpersonal relationship, causing Sanders to develop a troubling fixation on Barnhill. ROA.672-680, 684-696, 698-699, 706-708. On several occasions, Sanders submitted written complaints about Barnhill to Store Manager and Appellee, Justyn Hersma. ROA.672-680, 684-696. Sanders' pre-promotion complaints—the only complaints relevant to the sole surviving claim in this case—described nothing more than a co-worker personality conflict. ROA.672-680. They did not complain that Barnhill's conduct was unlawful in any way, shape, or form under Title VII (or any other law under which Sanders sued). Sanders may have believed otherwise in her head or in hindsight, but these pre-promotion complaints never communicated to FedEx Office that she was opposing conduct she believed to be unlawful discrimination. *Id.* Because the content of these two complaints is dispositive of this appeal, their substance is set forth here in detail.

Sanders filed her first complaint, five single-spaced pages, on March 16, 2022. ROA.672-676. In it, she wrote that Barnhill "did not utter a single word to" her for "[t]he bulk of the day" and that Barnhill "just still stood there **COLD AND DISTANT**." ROA.672 (emphasis in original). She alleged that Barnhill lied about Sanders "ma[king] her go [to lunch] earlier in the day," that Barnhill was "**UNSETTLING**" and "**STRANGE**," "whin[ed] and pout[ed]" in front of customers when asking whether Sanders knew a product number, and that an unknown individual "carefully peeled off" a fellow employee's water bottle label. ROA.672-676 (emphasis in original). Sanders further alleged that Barnhill "blamed two other employees" for what Sanders believed to be Barnhill's mistake in using wrong tape on a package. ROA.674.

Sanders characterized Barnhill's behavior with passionate language. She wrote: "I DO NOT FEEL SAFE AROUND MY CO-WORKER. She is cunning and sneaky and she will not stop." ROA.676. She also speculated that "[Barnhill] c[ould] easily claim and falsely accuse [Sanders] of saying anything. . . up to and including something SEXUAL, VIOLENT, RACIST, TERRORISTIC, THREATENING." *Id.* Sanders further alleged that Barnhill "**HAS THE SAME PERSONALITY TRAITS AND BEHAVIORAL HABITS OF GIRLS WHO CRY RAPE**." ROA.675 (emphasis in original).

Notably, nowhere in this first complaint did Sanders allege that Barnhill's motivation for any of this behavior was Sanders' race, sex, or any other protected characteristic. Indeed, the only mention of race in the complaint was Sanders' speculation that Barnhill could someday falsely accuse ***Sanders*** of saying something racist or sexual—not that Barnhill was actually being racist or initiating sexual contact toward Sanders. ROA.676. In fact, Sanders testified at her deposition that at the time she submitted this complaint, Barnhill had never accused Sanders of anything sexual or racist. ROA.619.

Sanders submitted her second complaint, four single-spaced pages, on May 25, 2022. ROA.677-680. She wrote that "[Barnhill's] hostile, toxic, rude, aggressive, passive aggressive, smug, snide, bullying behavior is HABITUAL, NEVER-ENDING, CONSTANT, UNPROFESSIONAL, AND ABOVE ALL COMPLETELY UNACCEPTABLE ESPECIALLY IN A WORKPLACE" and that Barnhill's "traits and actions . . . [and] hostile behavior are still ever present and are progressively getting worse." ROA.680.

The specific conduct Sanders described included: Barnhill told a co-worker (Stewart Wertenberger) that Sanders "g[ave] away FREE SERVICES" to receive positive customer reviews; Barnhill "suggested that another one of our co-workers did something incorrectly . . . even though that was not true"; Barnhill told another co-worker that Sanders had been using the printer when Barnhill needed it; and there

were unspecified rumors about Sanders that Sanders attributed to Barnhill. ROA.677-680. Sanders accused Barnhill of a "VENDETTA AGAINST [Sanders] WITH ABSOLUTELY NO PROVOCATION." *Id.*

Like the first complaint, the second complaint did not allege that Barnhill's conduct was motivated by Sanders' race, sex, or any other protected characteristic. It did not mention race or any other form of unlawful discrimination at all. Simply put, Sanders' description of Barnhill—however "hostile" and "toxic"—failed to allege conduct made unlawful by Title VII.

On July 21, 2022, FedEx Office posted a job listing for a Store Lead Consultant position at the Gaylord Texan location where Sanders worked. ROA.643. Sanders mistakenly applied for the position as an external applicant on July 26, 2022, and then correctly as an internal applicant on August 3, 2022. ROA.642. FedEx Office offered her the promotion that same day, with an effective start date of August 8, 2022. ROA.681. Sanders contends, with no competent record evidence, that Hersma allegedly conditioned her promotion to Store Lead Consultant on the cessation of her complaints against Barnhill.

Nevertheless, after her promotion, Sanders submitted four additional complaints between September and December 2022. ROA.684-696, 706-708. Then, on January 24, 2023, Sanders submitted a sixth complaint alleging "racial bias by the men in authority who are all white men." ROA.713-716. This was the ***first***

complaint—submitted five months after she had already been promoted—in which Sanders ascribed unlawful discriminatory treatment, and there is zero record evidence that Appellees acted adversely towards Sanders on account of it.[1]

## B. Procedural History.

On April 16, 2024, Sanders filed suit against FedEx Office and Print Services, Inc., Christian Richardson, and Justyn Hersma. ROA.15-42. Her claims proceeded through multiple amended complaints and motions to dismiss. ROA.83-108, 133-289, 292-341, 344-377. On March 24, 2025 and in response to Appellees' motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court dismissed Sanders' race discrimination claims and her state law claims for negligent

[1] During her employment, Sanders also filed a charge with the National Labor Relations Board in February 2023 and a charge of discrimination with the Equal Employment Opportunity Commission on March 13, 2023. As confirmed by her deposition testimony, she does not rely on either as protected activity in support of her retaliation claim. ROA.39, 599, 641-643. Moreover, Sanders' claimed adverse employment action is that she should have been promoted to Store Lead Consultant sooner and the time period for such a claim is many months *before* she filed these charges.

In addition, Sanders reported Appellees to the FBI, DOJ, OSHA, and the Texas Office of the Attorney General. ROA.599, 652. Sanders testified she submitted these complaints in either 2024 or 2025—years after her employment with FedEx Office ended. These post-employment complaints, of which Sanders did not know if Appellees were even aware—cannot and are not the basis of her retaliation claim. ROA.641, 645.

retention, supervision, and gross negligence, while allowing her retaliation claim under Title VII, Section 1981, and the TCHRA to proceed. ROA.378.

Sanders moved for summary judgment on her retaliation claim on June 12, 2025, and Appellees filed their own motion for summary judgment on June 30, 2025. ROA.447-524, 551-748. On September 19, 2025, Magistrate Judge Hal R. Ray, Jr. issued "Findings, Conclusions, and Recommendation," (the "Recommendation") recommending that Appellees' motion for summary judgment be granted and Sanders' motion be denied. ROA.1035-1064. On December 2, 2025, the district court adopted the Recommendation and entered final judgment in Appellees' favor. ROA.1107-1109.

On December 23, 2025, Sanders filed a Rule 59(e) motion to alter or amend the final judgment. ROA.1154-1169. In her motion, Sanders argued that the court committed a "manifest error of law" by applying an overly narrow definition of protected activity that conflicted with controlling precedent. ROA.1159, 1163-1164. Specifically, she contended that: (1) the court's ruling was contrary to *EEOC v. Rite Way Service, Inc.*, 819 F.3d 235 (5th Cir. 2016) and *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209 (5th Cir. 2023), which hold that "magic words" are not required for protected opposition; (2) FedEx Office's own policies intertwine "harassment" and "discrimination" under the same Equal Employment Opportunity umbrella, such that Sanders' use of the company's own terminology to report

"harassment" should be treated as protected opposition to discrimination; (3) the court failed to account for "direct evidence" of retaliation in the form of audio recordings and testimony showing that Hersma conditioned Sanders' promotion on the cessation of her workplace complaints; (4) the court did not properly apply Federal Rule of Civil Procedure 56 to Sanders' evidence, including her audio recordings and unsworn declaration; and (5) the court relied on an incorrect sequence of events regarding the timing of Sanders' promotion. ROA.1159-1163.

The district court denied the motion on February 18, 2026, "[f]or the reasons stated in Defendants' response to the motion (doc. 88) and Magistrate Judge Ray's proposed findings, conclusions, and recommendation (doc. 76)." ROA.1179-1180. The court held that Sanders' motion "attempts to re-litigate the settled and correct interpretation of protected activity under Title VII applied in Magistrate Judge Ray's opinion." ROA.1179. The court confirmed that its "interpretation of protected activity is consistent with precedent" and, while acknowledging that "magic words" are not required, held that "protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." ROA.1180. The court concluded that Sanders' "contentions fail, however, when she claims that her complaints to management concerned discriminatory treatment and, as a result, constituted protected activity under Title VII." *Id.* The court noted that Sanders' pre-promotion complaints "did not ascribe unlawful discriminatory

treatment to management" and that "Plaintiff merely alleged behavior that can be objectively described as 'antisocial at worst.'" *Id.*

Sanders filed her notice of appeal on February 23, 2026.

## IV. SUMMARY OF THE ARGUMENT

This Court should affirm the district court's grant of summary judgment in Appellees' favor. The case turns on a single, dispositive question that the district court resolved correctly: whether Sanders engaged in protected activity before her August 2022 promotion. She did not.

Sanders' pre-promotion workplace complaints—filed in March and May 2022—described an interpersonal and personality conflict with her co-worker, Kecia Barnhill, including coldness, eyerolling, alleged lying, and general hostility. These complaints did not allege that Barnhill's conduct was motivated by Sanders' race, sex, or any other characteristic protected by Title VII. Sanders herself testified that Barnhill had never made any sexual or racist accusations against her at the time of the pre-promotion complaints. Complaining about a co-worker's unpleasant behavior—even behavior that is hostile, toxic, or bullying—is not protected activity under Title VII unless the complaint opposes conduct made unlawful. This Court has consistently held that complaints about co-worker behavior that do not involve an employee being treated unfairly due to a protected characteristic are not protected activity.

Sanders' reliance on the "reasonable belief" standard set forth in *EEOC v. Rite Way Service, Inc.* does not change this result. That standard requires the plaintiff to show at least a reasonable belief that the conduct she opposed violated Title VII. Sanders may have subjectively perceived Barnhill's behavior as harassing, but a reasonable person could not have believed that the behavior described in her first two complaints—including being given the silent treatment, sulking, spreading rumors, and lying about lunch breaks—violated Title VII. Nor does FedEx Office's internal use of the term "harassment" in its Equal Employment Opportunity policies transform every workplace complaint using that word into opposition to unlawful discrimination under the law. An employer's internal compliance framework does not define the boundaries of Title VII's protections.

Sanders' purported "direct evidence" of retaliation fares no better. The audio recordings of alleged conversations between her and Hersma, upon which she relies, were never authenticated and therefore do not constitute competent summary judgment evidence. But even assuming the recordings are what Sanders claims, the statements attributed to Hersma concern nothing more than Sanders' habit of filing workplace complaints about Barnhill's interpersonal behavior. If the underlying complaints did not constitute protected activity, then conditioning employment decisions on the cessation of those complaints is not, as a matter of law, direct evidence of Title VII retaliation. Indeed, the district court expressly considered this

evidence and properly concluded it does not constitute direct evidence of retaliation. Sanders' remaining arguments—that the district court misapplied the summary judgment standard and relied on a factual error regarding the timing of her promotion—are likewise without merit. The district court did not improperly weigh evidence or resolve inferences against her; rather, it properly concluded that Sanders failed to produce competent evidence creating a genuine dispute of material fact on an essential element of her claim. Sanders herself moved for summary judgment, and the district court determined that she could not carry her burden under either motion. The alleged factual error regarding promotion timing is immaterial because the district court's holding rests on the threshold determination that Sanders did not engage in protected activity prior to her promotion—a purely legal conclusion that does not turn on the precise date of that promotion.

## V. ARGUMENT

The Court should affirm the district court's dismissal of Sanders' claims for the following reasons.

### A. Standard of Review.

This Court reviews a district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Allen v. U.S. Postal Service,* 63 F.4th 292, 299 (5th Cir. 2023). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute concerning a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When the moving party has carried its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-movant to show that the entry of summary judgment would be improper. *Id.* at 243. The nonmovant must go beyond her pleadings and set forth specific facts showing that there is a genuine issue for trial. *Id.* "Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).

Though the Court views the evidence in the light most favorable to the non-movant, but the non-movant is not entitled to have all conclusions automatically resolved in her favor. Rather, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "We do not, however, in the absence of any proof, assume that the non-moving party could or would prove the necessary facts." *Id*. (citing *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990)).

The district court did not err in granting Appellees' Motion for Summary Judgment for the following reasons:

### 1. **The District Court Correctly Determined that Sanders Failed to Engage in Protected Activity Prior to her Promotion to Store Lead Consultant.**

The anti-retaliation provision of Title VII "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII." *Brown v. Wal-Mart Stores E., LP*, 969 F.3d 571, 576-77 (5th Cir. 2020). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Id.* at 571. The same framework applies to claims under 42 U.S.C. § 1981 and the TCHRA. *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 352 (2013); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). This appeal concerns whether Sanders can satisfy the first element—that she engaged in protected activity prior to her promotion to Store Lead Consultant in August 2022. She did not.

The record is unambiguous. Sanders submitted six complaints directly to FedEx Office during her employment with the company. ROA.672-680, 684-696, 706-708, 713-716. The first two complaints—submitted on March 16, 2022, and May 25, 2022—are the only complaints relevant to whether Sanders engaged in

protected activity before her promotion because they are the only two that occurred prior to her promotion to Store Lead Consultant in August 2022. ROA.672-680. Both complaints concerned Barnhill's interpersonal behavior and neither alleged that Barnhill's conduct was unlawful or motivated by Sanders' race, sex, or any other protected characteristic.

In her first complaint, Sanders described Barnhill as "cold and distant," alleged that Barnhill lied about Sanders making her go to lunch early, that Barnhill "whined and pouted" in front of customers, and that someone "carefully peeled off" a co-worker's water bottle label. ROA.672-676. Sanders characterized Barnhill's behavior with intense language, writing that she did "not feel safe" around Barnhill and that Barnhill was "cunning and sneaky." *Id.* But nowhere in the complaint did Sanders allege that Barnhill's motivation for any of this behavior was Sanders's race, sex, or other protected characteristic. *Id.*

Sanders' second complaint similarly described interpersonal hostility—Barnhill allegedly told a co-worker that Sanders "gave away free services," suggested another co-worker made mistakes, and spread rumors. ROA.677-680. Sanders accused Barnhill of a "vendetta . . . with absolutely no provocation" that included "hostile, toxic, rude, aggressive, passive aggressive, smug, snide, and bullying behavior." *Id.* Critically, however, this alleged and subjective "vendetta" did not include racist, sexist, or discriminatory behavior. *Id.*

This Court has repeatedly and consistently held that complaints about co-worker behavior that are not discriminatory—even when the behavior is antisocial, annoying, or otherwise troubling—necessarily do not fall under the umbrella of employee activity protected by Title VII. Where there is "no evidence that … when she made her complaints to management, [the plaintiff] ever mentioned that she felt she was being treated unfairly due to her *race* or *sex*," she "fail[s] to demonstrate that she engaged in a protected activity under Title VII." *Harris-Childs v. Medco Health Sols., Inc.*, 169 Fed. Appx 913, 916 (5th Cir. 2006) (emphasis in original). Any "grievance [that does] not oppose or protest racial discrimination or any other unlawful employment practice under Title VII" does not qualify as protected activity. *Moore v. United Parcel Serv., Inc.*, 150 Fed. Appx 315, 319 (5th Cir. 2005).

Sanders' pre-promotion complaints fall squarely within this line of cases. They complained about co-worker interpersonal conflict—nothing more. This Court's decision in *Yarbrough v. SlashSupport, Inc.*, 152 F.4th 658 (5th Cir. 2025), confirms this result. There, the Court held that plaintiffs failed to establish protected activity where their complaints about a lack of accountability at the management level, employee dissatisfaction, and inconsistent policy enforcement did not include statements linking any of the complained-of conduct to race. *Id.* at 667. As the Court explained, "[a]side from conclusory and unsubstantiated assertions, there was no evidence" that the complained-of conduct was race-based, and plaintiffs' "feelings"

of discrimination were insufficient. *Id.* at 666 (citing *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999)).

Similarly, here, Sanders' subjective feelings that she was somehow being targeted by Barnhill do not transform facially race-neutral complaints about a co-worker's personality and alleged conduct into opposition to unlawful discrimination. Indeed, Sanders' pre-promotion complaints never allege that Barnhill's behavior was motivated by Sanders' race, sex, religion, national origin, or any other protected characteristic. They never mention discrimination. They never suggest that the conduct they describe violates any law. Sanders herself confirmed these dispositive facts during her deposition. ROA.619.

Nevertheless, Sanders argues that her use of the phrase "hostile" and her description of feeling "unsafe" should be sufficient to constitute protected activity. But this Court has rejected that argument. *Yarbrough,* 152 F.4th at 667. An employee's subjective belief that she is engaging in protected activity is irrelevant if her complaint does not communicate to the employer that she is opposing unlawful discrimination. *Harris-Childs*, 169 Fed. Appx at 916; *Moore*, 150 Fed. Appx at 319. The district court's characterization of the conduct described in Sanders' pre-promotion complaints as "antisocial at worst" was an accurate description of the factual record, not an imposition of a heightened legal standard. Said another way, because the substance of Sanders' complaints concerned interpersonal conflict rather

than conduct based on a protected characteristic or opposition to conduct made unlawful by Title VII (or any other law), the district court properly determined that neither amounted to protected activity.

**a. *The "Reasonable Belief" Standard Does Not Rescue Sanders' Pre-Promotion Complaints.***

Sanders argues that the district court imposed a "magic words" requirement for protected activity. This mischaracterizes the district court's ruling and this Court's precedent. Sanders is correct that this Court has held that an employee "need not prove that the conduct she opposed rose to the level of a Title VII violation," but, she "must at least show a reasonable belief that it did." *Taliaferro v. Lone Star Implementation & Elec. Corp.*, 693 Fed. Appx 307, 310 (5th Cir. 2017).

The "reasonable belief" standard is not, however, a passkey that converts every workplace complaint into protected activity simply because the plaintiff subjectively believed she was being treated unfairly. A plaintiff's subjective belief is meaningless if the underlying complaint "does not involve an employee being treated unfairly due to race or sex. . . ." *Arora v. Starwood Hotels & Resorts Worldwide, Inc.*, 294 Fed. Appx 159, 162 (5th Cir. 2008); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000); *Harris-Childs*, 169 Fed. Appx 913, 916 (5th Cir. 2006).

This Court's recent decision in *Yarbrough* is directly on point. As the Court explained, to prove opposition to discrimination, "the employee must show 'that she

had at least a reasonable belief that the practices she opposed were unlawful.'" *Id.* (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996)). One plaintiff in *Yarbrough* "complained of 'discrimination,'" but this Court held that "no reasonable plaintiff could believe that the complained-of conduct was discrimination" where the substance of his complaints concerned a manager ignoring him, giving incorrect assignments, and being generally unpleasant. *Id.* at 668. Another plaintiff complained that management's approach "just doesn't seem right" and raised concerns about workplace policy enforcement, but this Court held these were complaints "of hypocrisy, not discrimination." *Id.* at 667. The Court affirmed the final judgment because "[n]one of those complaints had to do with race." *Id.* at 668.

Sanders' case is indistinguishable from *Yarbrough*. Like the plaintiffs there, Sanders complained about workplace conduct she found objectionable—a co-worker's interpersonal hostility and behavior—without connecting that conduct to any protected characteristic or unlawful conduct. Her subjective characterization of the behavior as "harassment" does not establish the requisite reasonable belief that Title VII (or any other law) was being violated.

The cases Sanders cites in support of the "reasonable belief" standard actually confirm the district court's analysis. In *Wallace v. Performance Contractors, Inc.*, this Court found protected activity where the employee complained of not being afforded opportunities ***based on her sex***. 57 F.4th 209, 224-25 (5th Cir. 2023)

(emphasis added). In *Long v. Eastfield College*, the employee complained that among other things, a colleague made a sexually explicit joke and treated her differently ***because of her gender***. 88 F.3d 300, 305 (5th Cir. 1996) (emphasis added). In each case, the complaint at issue specifically implicated conduct amounting to unlawful discrimination based on a protected characteristic. Sanders' first two and only relevant complaints do not rise to that level in any respect.

Thus, the district court did not require "magic words." It correctly held that protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue. *See e.g.*, *Moore*, 150 Fed. Appx at 319. Sanders' pre-promotion complaints did not clear even this modest threshold. Sanders may have perceived Barnhill's behavior as annoying, petty, vindictive, or hostile, but a reasonable person could not have believed that Barnhill's behavior violated Title VII. The behavior described in those complaints—silent treatment, uncomfortable interactions, sulking, rumor-spreading, pouting, and alleged lying—is simply not conduct that any reasonable person would believe constitutes unlawful discrimination on the basis of a protected characteristic.

**b. *FedEx Office's Internal Policies Do Not Transform General Workplace Complaints into Protected Activity.***

Sanders devotes considerable attention to the argument that FedEx Office's own policies define "harassment" as a form of discrimination, and that by using the

company's terminology to report "harassment," she was necessarily opposing unlawful discrimination. This argument is unavailing.

First, it confuses the colloquial use of the word "harassment" with conduct made unlawful by Title VII. Title VII does not prohibit all workplace harassment; it prohibits harassment based on race, sex, religion, national origin, or other protected characteristics. 42 U.S.C. §§ 2000e *et seq*. The fact that a company's internal policies use the term "harassment" broadly does not alter the legal definition of protected activity under the applicable law. *Id.* Second, even within FedEx Office's own policies, the definition of prohibited "harassment" is tied to conduct that is discriminatory—i.e., based on protected status. ROA.661-663. Sanders's pre-promotion complaints did not describe conduct tied to any protected status. She used the word "harassment" to describe interpersonal conflict and alleged bullying behavior, not to alert Appellees to unlawful discrimination based on race or any other protected characteristic. ROA.679.

Third, this Court consistently focuses its analysis on the substance of the employee's complaints, not the labels attached to them. The question is not whether the employee used a particular word found in a company handbook, but whether the employee's communication could reasonably be understood as opposing discriminatory treatment. *Wallace*, 57 F.4th at 225. Sanders' first two complaints, read in their entirety, cannot reasonably be understood as opposing discrimination

or any other conduct made unlawful by Title VII. In sum, the district court did not err in finding that Sanders did not engage in protected activity prior to her promotion.

### 2. The District Court Properly Considered and Rejected Sanders' Purported "Direct Evidence" of Retaliation.

Sanders contends that the district court "failed to credit" her "direct evidence of retaliatory intent," including audio recordings in which Hersma allegedly conditioned her promotion on her ceasing her workplace complaints against Barnhill and later issued her an "ultimatum" to stop complaining. This argument fails for two independent reasons: first, the audio recordings were never authenticated and, therefore, do not constitute competent summary judgment evidence regardless of what Sanders purports they contain; and second, even assuming the recordings are what Sanders claims, the statements attributed to Hersma do not constitute direct evidence of retaliation because they concern workplace complaints that are, as a matter of law, not protected activity.

#### a. *The Audio Recordings Are Not Authenticated and Cannot Defeat Summary Judgment.*

As a threshold matter, the audio recordings on which Sanders' entire "direct evidence" theory depends were never properly authenticated and, therefore, cannot be considered as competent summary judgment evidence. Federal Rule of Civil Procedure 56(c)(2) requires that evidence cited to support or dispute a fact must be capable of being "presented in a form that would be admissible in evidence."

Federal Rule of Evidence 901(a) requires that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Sanders produced no such evidence. She did not authenticate the recordings through testimony or any other method recognized under Rule 901(b). This Court has made clear that audio recordings require proper authentication before they may be admitted, including a showing of "the fidelity of the recording equipment" and "the absence of material alterations." *United States v. Johnson*, 943 F.3d 214, 220 (5th Cir. 2019) (citing *United States v. Green*, 324 F.3d 375, 379 (5th Cir. 2003)).

In *Johnson*, this Court held that recordings were properly authenticated only because the government presented testimony from a technician who installed and maintained the recording equipment, described the automated recording and storage process, and confirmed the system produced accurate recordings—and from an officer who identified the speaker on the calls based on personal knowledge. *Id.* at 218, 220-21. Sanders provided none of these foundational assurances. She offered no testimony or evidence regarding the recording equipment used, the integrity of the recording process, or whether the recordings were altered or manipulated in any way. There is no evidence in the record establishing that these recordings were made on the dates Sanders claims, that the voices on them are who she purports them to be, or that the recordings have not been edited, spliced, or otherwise manipulated.

Without authentication, there is simply no way to verify any of her purported threshold "facts."

Thus, the district court properly determined that "Sanders has not properly authenticated this recording (or any other recording she attempts to offer in evidence) or shown that they could be put in admissible form as Federal Rule of Civil Procedure 56(c)(2) requires." ROA.1047. Because the recordings lack authentication, they are not competent summary judgment evidence. It does not matter what Sanders purports the recordings show or what statements she attributes to Hersma based on them. Unauthenticated recordings cannot create a genuine dispute of material fact, and the district court was correct to so hold. *See Yarbrough*, 152 F.4th at 666 ("[c]onclusory and unsubstantiated assertions" are insufficient to defeat summary judgment).

**b. *Even if Authenticated, Hersma's Alleged Statements Do Not Constitute Direct Evidence of Retaliation.***

Notwithstanding the threshold authentication deficiency, the district court did not ignore Sanders' purported direct evidence. The thirty-page Recommendation devoted extensive analysis—spanning more than ten pages—to each piece of purported direct evidence Sanders offered. ROA.1046-1059. The court reviewed Sanders' briefing, her deposition transcript, the quoted statements she attributed to Hersma, and even attempted to access the Dropbox links she submitted containing the unauthenticated audio recordings and her unsworn declaration, discussed more

fully *infra*. The court afforded Sanders liberal construction as a *pro se* party, "reviewed Sanders' pleading and endeavored to identify the statements and documents that it could cognizably interpret as direct evidence." ROA.1046. After this thorough review—and even "viewing this purported evidence in the light most favorable to Sanders"—the district court expressly found "that Sanders does not offer direct evidence of retaliation." ROA.1046-1059.

The court's conclusion was not based on a refusal to consider Sanders' evidence; it was based on a careful evaluation of each piece of that evidence on its merits. After careful review, the court properly concluded that these statements do not constitute direct evidence of unlawful retaliation.

Moreover, direct evidence of retaliation is "a statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action." *Robinson Prop. Grp., L.P. v. Mitchell*, 427 F.3d 987, 993 (5th Cir. 2005) (citing *Fabela v. Socorro Indep. Sch. Dist.,* 329 F.3d 409, 415 (5th Cir. 2003)). It, therefore, follows that to constitute direct evidence of retaliation under Title VII, the "improper criterion" that a defendant employer directly, facially admits to using as a basis for an adverse employment action must be the plaintiff's protected activity. *Id.* As correctly noted by the district court, "[i]f a defendant employer admits to using unprotected activity as a basis for the adverse employment action, then for purposes of constituting direct

evidence of retaliation, the employer has effectively admitted nothing at all." ROA.1053.

This principle is dispositive. Sanders' pre-promotion complaints did not constitute protected activity as a matter of law. The "HR stuff" Hersma allegedly referenced related to Sanders' complaints about Barnhill's interpersonal behavior that did not oppose any practice made unlawful by Title VII. Even taking Hersma's alleged statement at face value—"in order for me to approve you for any promotions, the HR stuff, that has to stop"—the "HR stuff" was not protected activity. Accordingly, Hersma's alleged conditioning of Sanders' promotion on the cessation of those non-protected complaints does not constitute direct evidence of unlawful retaliation, because the "improper criterion" (retaliation for engaging in protected activity) is absent.

To be clear, because the recordings were never authenticated, their content is legally irrelevant to the summary judgment analysis. Whatever Sanders purports the recordings show, unauthenticated evidence cannot defeat a properly supported motion for summary judgment. The district court was correct to reach this conclusion, and correct again when it determined that even crediting the statements Sanders attributes to Hersma, they do not constitute direct evidence of retaliation for the reasons explained above.

Similarly, the "two options" ultimatum Sanders identifies—allegedly communicated on October 17, 2022, in which Hersma told Sanders she could either stop complaining or face a transfer or reduction in hours—occurred after Sanders' promotion on August 8, 2022 and related to complaints that, like the pre-promotion complaints, described co-worker behavior without alleging unlawful discrimination. The district court carefully examined the recording and concluded that "nothing suggests that [Hersma] 'ma[de] it clear' that reporting Barnhill would find Sanders risking a 'forcibl[e] transfer' or a reduction in hours or pay." ROA.1048. At most, and as the district court properly concluded, the recorded and alleged conversation suggested Hersma "considered an employee transfer to be a viable solution to the Sanders-Barnhill conflict, not that he outright threatened Sanders with a transfer if she did not stop reporting Barnhill." *Id.* This, too, is not direct evidence of retaliation for the same reasons explained above.

**c. *Sanders Failed to Properly Present Her Alleged Evidence to the District Court, and Even After the Court Received It, the Evidence Did Not Create a Genuine Issue of Material Fact.***

Sanders' evidentiary presentation compounded the legal deficiency of her claim. When she filed her motion for summary judgment on June 12, 2025, and her response to Appellees' motion for summary judgment on July 21, 2025, Sanders submitted to the district court audio recordings and an unsworn declaration via links to the file-sharing website Dropbox.com, rather than through the district court's

Electronic Case Filing System or by any other proper method. ROA.1047, 1051-1052. The district court attempted to follow the Dropbox link to access Sanders' unsworn declaration but received an error message. ROA.1051. The Magistrate Judge noted in the Recommendation that "submitting links to a public file sharing website is an inadequate attempt to offer summary judgment evidence" and that Sanders had "not properly authenticated [the] recording (or any other recording she attempts to offer in evidence)." ROA.1047.

After the Magistrate Judge issued his Recommendation on September 19, 2025, Sanders filed objections on October 20, 2025. ROA.1071-1092. Then, on October 28, 2025—four and a half months after she filed her own motion for summary judgment—Sanders manually filed a USB flash drive with the Clerk's office containing copies of all the exhibits referenced in her dispositive motion, including her unauthenticated audio recordings and unsworn declaration. ROA.1093-1099.

Critically, when the district court conducted its *de novo* review, Judge Means expressly considered this late-filed flash drive. The district court's "Order Adopting the Magistrate Judge's Findings and Conclusions" specifically states that the court made "an independent review" of, among other things, "Plaintiff's October 20 objections to Judge Ray's proposed findings, conclusions, and recommendation (doc. 79), including her late-filed flash-drive appendix (doc. 80)." ROA.1107-1108.

Thus, contrary to Sanders' suggestion that evidence was ignored, the district court reviewed the entirety of Sanders' evidentiary and delinquently-filed submissions, including her unauthenticated audio recordings and unsworn declaration before entering its final judgment.

After reviewing all of the evidence, including Sanders' incompetent record evidence, the district court concluded that "Plaintiff has failed to present evidence demonstrating a genuine issue of fact as to whether her pre-promotion complaints to her employer constituted 'protected activity.'" ROA.1179-1180. Even with that generous approach—and even with full access to the flash drive containing Sanders' unauthenticated audio recordings and unsworn declaration—the court concluded that the evidence did not constitute direct evidence of retaliation or create a genuine issue of material fact. This is because, as explained above, even taking the content of the unauthenticated recordings at face value, the statements do not facially show that an improper criterion (retaliation for protected activity) served as a basis for any alleged adverse employment action taken against Sanders.

### 3. The District Court Correctly Applied the Summary Judgment Standard.

Sanders argues that the district court improperly weighed evidence and resolved factual inferences against her. This argument reflects a misunderstanding of how the summary judgment standard applies to undisputed facts. Summary judgment is proper when "the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the court must view evidence in the light most favorable to the non-movant, it is not required to resolve legal conclusions in her favor. *Anderson*, 477 U.S. at 248. "Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass*, 79 F.3d at 1429. And in the absence of any proof, the court does not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075.

The district court did not weigh competing evidence. It reviewed Sanders' own written pre-promotion complaints—undisputed documentary evidence whose content no party contests— and correctly determined as a matter of law that they did not oppose conduct made unlawful by Title VII and were, therefore, not protected activity. Whether a complaint constitutes protected activity is a legal question, not a factual dispute to be automatically resolved in the non-movant's favor.

The record confirms the thoroughness of the court's process. Magistrate Judge Ray's thirty-page Recommendation analyzed both parties' dispositive motions, reviewed the elements of Sanders' *prima facie* case, and examined the record evidence. ROA.1035-1064. Judge Means then conducted an independent *de novo* review of the record. ROA.1107-1108. After this comprehensive review, the court concluded that Sanders "failed to present evidence demonstrating a genuine issue of fact as to whether her pre-promotion complaints to her employer constituted

'protected activity.'" *Id.* Sanders' Rule 59(e) motion raised the same arguments, and the court denied it, holding that its "interpretation of protected activity is consistent with precedent." ROA.1179-1180.

Moreover, Sanders herself filed a motion for summary judgment, asserting that she was entitled to judgment as a matter of law. ROA.447-524. The court evaluated her and Appellees' dispositive motions and determined that Sanders could not demonstrate protected activity under either standard—whether as the non-movant or movant. ROA.1179-1180. That Sanders cannot prevail even when bearing the movant's burden underscores that this case presents a legal deficiency, not a factual dispute. Sanders' dissatisfaction with the court's legal conclusion does not transform a proper application of law into an improper weighing of facts.

**a. The Alleged Factual Error Regarding Promotion Timing is Immaterial.**

Sanders identifies what she characterizes as a "material factual error" in the Recommendation, which stated that Sanders "had applied for and already received her promotion" before Hersma gave her the alleged "ultimatum" to stop complaining. Sanders contends that the record shows the "retaliatory contingency" was communicated by Hersma on August 1, 2022, she agreed to it the same day, and she was not promoted until August 8, 2022—meaning the alleged retaliation occurred before the promotion decision.

This argument is immaterial. First, the district court's holding does not depend on whether the alleged statements came before or after Sanders' promotion. The court's ruling rests on the legal determination that Sanders' pre-promotion complaints about Barnhill did not constitute protected activity under Title VII. Whether Hersma referenced those complaints on August 1 through August 8 does not change their character as non-protected activity. Even if the sequence Sanders advances is accepted in full—that Hersma conditioned Sanders' promotion on her ceasing her workplace complaints against Barnhill, she agreed, and was then promoted—the outcome is the same. The "HR stuff" Hersma allegedly demanded Sanders stop was complaints about Barnhill's interpersonal behavior that did not oppose any practice made unlawful by Title VII. An employer's decision to condition a promotion on the cessation of non-protected complaints is not actionable retaliation under Title VII.

Second, the precise date of any conversations between Hersma and Sanders regarding the promotion cannot be independently verified. Sanders' account rests on the audio recordings that were never authenticated—and unauthenticated recordings cannot establish the date of a conversation any more than they can establish its content. *See e.g.*, *Johnson*, 943 F.3d at 220. Sanders' uncorroborated narrative about the precise sequence of oral conversations preceding her application for a promotion cannot override the documented timeline absent authenticated evidence.

Even crediting Sanders' proposed timeline, it does not alter the legal analysis. The promotion was not withheld—Sanders received it. And the complaints she was allegedly told to stop making were not protected activity. The timing of the alleged conversations is, therefore, immaterial to the disposition of this appeal and the district court did not err in granting Appellees' motion for summary judgment.

## VI. CONCLUSION

For all of the foregoing reasons, Appellees respectfully request that the Court deny all issues raised on appeal by Sanders, affirm the district court's Order and Judgment in all respects, tax costs of appeal against Sanders, and grant all other relief, general or special, at law or in equity, to which Appellees may be justly entitled.

Respectfully submitted,

*<u>/s/ Shaina E. Hicks</u>*

Eva W. Turner
Texas Bar No. 24051485
eva.turner@ogletree.com
Shaina E. Hicks
Texas Bar No. 24139802
shaina.hicks@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
Preston Commons West
8117 Preston Road, Suite 500
Dallas, Texas 75225
214.987.3800 (Phone)
214.987.3927 (Fax)
**ATTORNEYS FOR DEFENDANTS-APPELLEES**

**CERTIFICATE OF SERVICE**

I certify that on July 1, 2026, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the Clerk of the Court, which will provide notice to Appellant Ivana Sanders.

*/s/ Shaina E. Hicks*
Shaina E. Hicks

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because this document contains 7,954 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using a currently updated and licensed copy of Microsoft 365 in 14-point Times New Roman font.

*/s/ Shaina E. Hicks*
Shaina E. Hicks