U.S. COURT OF APPEALS
RECEIVED
Jul 05, 2026
FIFTH CIRCUIT

**No. 26-10182**

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

IVANA SANDERS
*Plaintiff-Appellant*

*V*.

FEDEX OFFICE AND PRINT SERVICES, INC., CHRIS RICHARDSON, JUSTYN HERSMA
*Defendant-Appellees*

---

Appeal From The United States District Court
for the Northern District Of Texas Fort Worth Division

---

REPLY BRIEF FOR APPELLANT

---

IVANA SANDERS
Pro Se Plaintiff - Appellant
IvanaSanders27@gmail.com
(704) 206-9995
P.O.BOX 803681
DALLAS, TX 75380

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this **Civil Case No. 26-10182**. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Pro Se Plaintiff - Appellant:**
IVANA SANDERS
IvanaSanders27@gmail.com
(704) 206-9995
P.O.BOX 803681
DALLAS, TX 75380

**Defendants-Appellees:**
FedEx Office and Print Services, Inc., Chris Richardson, Justyn Hersma

**Counsel for Defendants-Appellees:**
EVA W. TURNER
Texas Bar No. 24051485
eva.turner@ogletree.com

SHAINA E. HICKS
Texas Bar No. 24139802
shaina.hicks@ogletree.com

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Preston Commons West
8117 Preston Road, Suite 500
Dallas, Texas 75225
214.987.3800 (Phone)
214.987.3927 (Fax)

*/s/ Ivana Sanders*
PRO SE APPELLANT

# TABLE OF CONTENTS


TABLE OF CONTENTS

TABLE OF AUTHORITIES

STATEMENT OF JURISDICTION

I. INTRODUCTION

A. Statement of the Case

1. District Court Four (4) Reversible Errors

a) Fifth Circuit and Supreme Court Precedent Rejects "Magic Words" Requirement

b) Appellant's Deposition Testimony Under Oath

c) District Court Weighed Evidence at Summary Judgment

d) District Court Relied on Incorrect Sequence of Events

II. LEGAL ARGUMENT

A. The Policy-Bridge Argument

1. Multi-Circuit Consensus

2. Federal Reasonable Notice Doctrine

3. Independent § 1981 Independent Retaliation Protection

B. Deposition Testimony Establishes Summary Judgment Evidence

1. Personal Knowledge Testimony

2. Critically Inappropriate Use of Johnson - A Criminal Case

C. Yarbrough Is Distinguished On Every Material Fact Of This Case

1. Six (6) Distinguished Facts Of Yarbrough

a) Post-Trial JMOL Standard — Not The Federal Summary Judgment Standard Which Governs This Appeal

b) Employer EEO Policy Framework Is Fully Absent From Yarbrough

c) Yarbrough Defendants Never Made Pretextual Explanations Confirming of Retaliatory Intent

d) Yarbrough Plaintiffs' Complaints Had No Racial Context

e) Yarbrough Defendants Documented Non-Discriminatory Basis For Employment Decisions

f) The Novel Question This Case Presents Is In No Way Addressed By Yarbrough

D. Timing Error Relied Upon By District Court

III. CONCLUSION

IV. CERTIFICATE OF SERVICE

V. CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

*Page(s)*

**Case**

*Allen v. U.S. Postal Service,*
*63 F.4th 292 (5th Cir. 2023)……………………………………1, 15, 16, 26, 27*
*Anderson v. Liberty Lobby, Inc.,*
*477 U.S. 242 (1986)…………………………………………………… 22*
*Bryant v. Compass Grp. USA, Inc.,*
413 F.3d 471, 475–76 (5th Cir. 2005)………………………………………. *22*
*Burnett v. LFW Inc.,*
*472 F.3d 471 (7th Cir. 2006)…………………………………………… 10*
*Clark Cnty. Sch. Dist. v. Breeden,*
532 U.S. 268, 273-74 (2001)……………………………………………. *34*
*CBOCS West, Inc. v. Humphries,*
*553 U.S. 442 (2008)…………………………………………………… 13*
*Criado v. IBM Corp.,*
*145 F.3d 437 (1st Cir. 1998)…………………………………………… 10*
*Crawford v. Metropolitan Gov't of Nashville,*
*555 U.S. 271 (2009)………………………………………… 1, 15, 26, 27, 28*
*EEOC v. Go Daddy Software, Inc.,*
*581 F.3d 951, 964 (9th Cir. 2009)……………………………………… 10*
*EEOC v. Rite Way Service, Inc.,*
*819 F.3d 235 (5th Cir. 2016)………………..1, 7, 8, 21, 25, 30, 31, 32, 34*
*Fraser v. Goodale,*
*342 F.3d 1032, 1036 (9th Cir. 2003)…………………………………19, 20*
*Garcia v. Professional Contract Services, Inc.,*
*938 F.3d 236, 241 (5th Cir. 2019)……………………………………… 14*
*Hamilton v. Dallas County,*
*No. 21-10133 (5th Cir. 2023)……………………………………… 2, 8, 14*
*Lee v. Offshore Logistical & Transp., LLC,*
*859 F.3d 353, 355 (5th Cir. 2017)……………………………………… 16*
*Long v. Eastfield College*
*(5th Cir. 1996)…………………………………………………………… 1, 8*

*Major League Baseball Props. v. Salvino, Inc.*,
*542 F.3d 290, 310 (2d Cir. 2008)*……………………………………………19
*NLRB v. Washington Aluminum Co.*,
*370 U.S. 9 (1962)*……………………………………………………………11, 12
*Porter v. Houma Terrebonne Hous. Auth.*,
*No. 14-31090 (5th Cir. 2015)*…………………………………………………26
*Ogden v. Wax Works, Inc.*,
*214 F.3d 999, 1007 (8th Cir. 2000)*……………………………………………9
*Okoli v. City of Balt.*,
*648 F.3d 216, 224 (4th Cir. 2011)*……………………………………………9
*Reeves v. Sanderson Plumbing Products, Inc.*,
*530 U.S. 133, 150 (2000)*……………………………………………2, 17, 22
*Skidmore v. Swift & Co.*,
*323 U.S. 134, 140 (1944)*……………………………………………………9
*Stoops v. One Call Commc'ns, Inc.*,
*141 F.3d 309 (7th Cir. 1998)*…………………………………………………11
*Tolan v. Cotton*,
*572 U.S. 650, 656–57 (2014)*……………………………………5, 17, 22, 34
*Wallace v. Performance Contractors*,
*No. 21-30482 (5th Cir. 2023)*…………………………………………………1
*United States v. Johnson*,
*943 F.3d 214 (5th Cir. 2019)*…………………………………………………19
*Yarbrough v. SlashSupport, Inc.*,
*152 F.4th 658 (5th Cir. 2025)*……………………………………………4,
*17, 20, 21, 22, 23, 25, 26, 27, 28, 29, 30, 31*

*Page(s)*

**Statutes**

42 U.S.C. § 1981……………………………………………………*12, 13, 14*
28 U.S.C. § 1746……………………………………………………*18*
42 U.S.C. § 2000e-3(a) - Title VII of the Civil Rights Act of 1964……………3, 6,
7, 8, 12, 25
Fed. R. Evid. 901(b)(1)……………………………………………………*18*
Texas R. Evid. 901(1)……………………………………………………*18*

Texas R. Evid. 901(a)………………………………………………………………….. *18, 20*

## INTRODUCTION

The Appellees argue that because a select few of the Appellant's Human Resources complaints did not use the word "race," they cannot constitute protected activity on that basis alone. The argument that they are making is exactly the "magic words" requirement that this Court's controlling precedent in *EEOC v. Rite Way Service, Inc., 819 F.3d 235 (5th Cir. 2016)*, explicitly prohibits. The proper question that is appeal poses is whether the Appellant's complaints, viewed in context, could reasonably be understood by a jury as opposing discrimination and whether the District Court improperly resolved that question against her at summary judgment. *Long v. Eastfield College, 88 F.3d 300 (5th Cir. 1996); Wallace v. Performance Contractors, Inc., 57 F.4th 209 (5th Cir. 2023).*

The employer, FedEx's, own policy framework creates a bridge satisfying the reasonable belief standard. Employees need not use precise, specific legal terminology when opposing discriminatory conduct as per *EEOC v. Rite Way Service, Inc.*. The context of the complaints, the circumstances surrounding them, and the employer's response determines whether the communication could reasonably be understood as opposing discrimination *Allen v. U.S. Postal Service, 63 F.4th 292 (5th Cir. 2023); Crawford v. Metropolitan Gov't of Nashville, 555 U.S.*

*271 (2009); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000)*. FedEx's own written policy defines the reporting channel as an EEO mechanism and defines “harassment” as a form of “unlawful discrimination,” it groups “harassment” and “discrimination” under the same Equal Opportunity umbrella, the policy framework itself provides the context establishing reasonable belief between both employee and the employer that when an employee who uses the employer designated channel and the employer designated terminology those complaints could reasonably be understood as opposing discrimination and therefore as legally protected activity, *Hamilton v. Dallas County, No. 21-10133 (5th Cir. 2023)*.

The District Court committed four (4) reversible errors and the Appellees’ brief cures none of them.

**1. Controlling Fifth Circuit Court and Supreme Court precedents reject the requirement of “magic words” regarding definitions of “Protected Activity”**

The Appellees' own brief articulates the correct legal standard "whether the employee's communication could reasonably be understood as opposing

discriminatory treatment," Appellees' Brief p.g. 22, but then misapplies that standard. This is because the Appellees are answering the wrong question addressing whether the FedEx's handbook redefines Title VII (it does not and the Appellant is not suggesting that it would), while simultaneously ignoring the actual question this appeal asks which is: whether a reasonable employee functioning within FedEx's EEO framework could reasonably believe she was opposing unlawful discrimination when she used FedEx's own EEO terminology through FedEx's own EEO reporting channel to report what FedEx, itself, defines as a "form of discrimination" (harassment).[1] Under this Court's reasonable belief standard, the answer is yes and a reasonable jury could conclude the same.

**2. The Appellant's Deposition Testimony Under Oath**

The Appellees assert that the Appellant's audio recordings and unsworn declaration were never authenticated and should not be considered as evidence. However, this argument overlooks independent evidentiary foundation of the Appellant's Deposition Testimony where she testifies under oath to the exact same conversations, recalling, and accounts that are also within the audio recordings and her unsworn declaration. The Deposition Testimony itself requires no authentication and is competent Summary Judgment evidence regardless of even

[1] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 18)

the audio recordings. Noticeably, again the Appellees do not dispute what Hersma said including conditioning the Appellants' promotions and pay raises on her cessation of filing Human Resources complaints nor do they dispute that he later admitted to doing so.

### 3. A reasonable jury could conclude that the Appellees were reasonably aware that Sanders was opposing discrimination

The Appellees rely immensely on *Yarbrough v. SlashSupport, Inc., 152 F.4th 658 (5th Cir. 2025)*, as dispositive. It is not. *Yarbrough* involved complaints about management style, policy enforcement, and being ignored highly generic workplace complaints with no connection to any protected characteristics in any context. Sanders' case features a categorically different set of circumstances: she reported an 11-month long sustained pattern of targeted, pervasive conduct by a white coworker to her employer's designated Equal Employment Opportunity (EEO) reporting channel, within a company where their written policy framework explicitly defines that EEO channel as the vehicle for reporting unlawful discrimination and explicitly defines "harassment" as a form of "discrimination." No case in this Court's jurisprudence has addressed the intersection of employer

EEO policy terminology and the reasonable belief standard in this specific factual context.

**4. Incorrect Sequence of Events Contrary to the Summary Judgment Record.**

The Appellees brief dismisses something as significant as a material timing error in the Magistrate's Recommendation as "immaterial." The Magistrate's incorrect finding that the promotion preceded the retaliatory conversation infected the causation analysis and cannot be disregarded as "immaterial" by assuming the ultimate answer to the central disputed question, that the Appellant's complaints created a genuine dispute on protected activity that should be resolved by a jury, *Tolan v. Cotton, 572 U.S. 650, 656–57 (2014)*.

The Appellees have never disputed:

- That Sanders repeatedly complained through FedEx's designated internal reporting EEO channels which they specifically direct employees to use to report EEO violations;
- That their own company policy defines "harassment" as "discrimination;"[2]
- That FedEx told employees that "harassment" was part of its EEO framework;[3]

[2] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 15)

[3] ROA.1097. (Filename: "(App. D, Vol. 4, Ex. 2) - FedEx Code of Conduct.pdf" p.g. 11)

- That management demanded that Sanders' stop making those EEO designated complaints in order to receive a promotion and pay raise;
- That Appellee Hersma made several direct admissions explicitly confirming retaliatory intent that the Appellant has testified to in Deposition under oath.

The Appellees' entire defense depends upon a single proposition that has no legal foundation: that complaints using employer designated EEO terminology made through the Appellees' own EEO framework somehow did not constitute protected opposition to discrimination. That proposition directly contradicts fundamental notice principles surrounding "protected activity," conflicts with Title VII's reasonable belief standard, the Appellees' own global corporate policies and teachings, and federal EEOC Guidance.

The central issue of this appeal is whether the District Court applied an improperly narrow definition of "protected activity" by requiring the Appellant to use "magic words" and weighed evidence reserved for a jury. **Legally, it did.** For that reason, the District Court's Grant of Summary Judgment should be reversed and this case remanded for trial.

# LEGAL ARGUMENT

## THE POLICY-BRIDGE ARGUMENT

The Appellant has never claimed that FedEx's handbook redefines Title VII protected activity standards. The policy-bridge argument is more narrow focusing on FedEx's own EEO policy framework and its relevance to the reasonable belief standard specifically to whether a reasonable employee, such as the Appellant, could believe she was opposing unlawful discrimination when she used FedEx's own EEO terminology through FedEx's own EEO reporting channel as they instruct their employees to do when opposing EEO violations.

Crucial to the "reasonable belief" analysis is the employer's own guidance to its employees. Under *EEOC v. Rite Way Service, Inc.,* the court must look at the context; here, the context is a corporate policy that treats the terms “harassment” and “discrimination” as interchangeable. FedEx’s own policies confirm that, within this workplace, “harassment” is not a neutral term, but a core part of its very own Anti-Discrimination framework specifically. Under this framework and guidelines by the Appellees, a reasonable employee who reports "harassment" through the Appellees’ designated EEO reporting channel could reasonably be understood as opposing discriminatory treatment specifically because FedEx's own policy defines that channel as the EEO reporting mechanism and defines “harassment” as a form

of "unlawful discrimination" listing it under "Anti-Discrimination". Opposition is protected when an employee reasonably believes she is reporting unlawful discrimination, even if she does not use legal terms. *Long v. Eastfield College (5th Cir. 1996)*. The Appellant is not in any way asking the Court to redefine Title VII. The Appellant asks the Court to apply the reasonable belief standard as this Court has articulated it via *EEOC v. Rite Way Service, Inc.* — which held that "magic words are not required" and that employer's own guidance to its employees establishes context — applying the perspective of a reasonable employee functioning within the policy context of the Appellees' designed framework. Furthermore, the Appellees would have had reasonable belief that Sanders was indeed reporting discriminatory harassment as per their own global company policy. *Hamilton v. Dallas County, No. 21-10133 (5th Cir. 2023)* holds that the terms and conditions of employment are central to Title VII claims.

Federal guidance as determined by The Equal Employment Opportunity Commission (EEOC) Enforcement Guidance on Retaliation and Related Issues, No. 915.004 (Aug. 25, 2016) based on the Opposition Clause of the Title VII on protected activity states, "The opposition clause applies if an individual explicitly or implicitly communicates his or her belief that the matter complained of is, or could become, harassment or other discrimination. The communication itself may be informal and need not include the words "harassment," "discrimination," or any other legal terminology, as long as circumstances show that the individual is

conveying opposition or resistance to a perceived potential EEO violation. Individuals may make broad or ambiguous complaints of unfair treatment, in some instances because they may not know the specific requirements of the anti-discrimination laws. Such communication is protected opposition if the complaint would reasonably have been interpreted as opposition to employment discrimination."[4] This guidance presents the exact same principle that the Appellant is arguing and asks the court to consider the inherent insight that this federal agency has over judgment on matters of protected activity, *Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).*

***Persuasive Authority***

The 4th Circuit Court held that it was sufficient to constitute "opposition" that plaintiff complained about "harassment" and described some facts about sexual behavior in the workplace that was unwelcome, and that it was not required that she specifically use the term "sexual harassment" or other legal terminology, *Okoli v. City of Balt., 648 F.3d 216, 224 (4th Cir. 2011)*. The 8th Circuit Court ruled that a reasonable jury could conclude that the plaintiff "opposed discriminatory conduct" when she told her harasser, who was also her supervisor, to stop "harassing" her, *Ogden v. Wax Works, Inc., 214 F.3d 999, 1007 (8th Cir.*

[4] EEOC, Enforcement Guidance on Retaliation and Related Issues, Notice No. 915.004, § II.A.2.a, at "Expansive Definition" (Aug. 25, 2016), available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues.

*2000)*. The 9th Circuit Court held that allegations need not have identified all incidents of the discriminatory behavior complained of to constitute opposition because "a complaint about one or more of the comments is protected behavior," *EEOC v. Go Daddy Software, Inc., 581 F.3d 951, 964 (9th Cir. 2009)*.

***Analogies***

The question the policy-bridge argument asks is not whether Sanders used perfect legal verbiage. The question it asks is whether a reasonable employee could believe that complaints submitted — as an employee to an employer who tells its employees in writing that reporting harassment IS reporting EEO violations — through her employer's designated EEO framework would reasonably believe that she was reporting unlawful discrimination. These legal principles reflect an established framework that federal and appellate courts have long applied across multiple statutory contexts below are a few analogies that also carry persuasive authority.

*FMLA and ADA Reasonable Notice Doctrine*

Under the Family and Medical Leave Act (FMLA) and the American Disabilities Act (ADA), federal courts have held that an employee is not required to invoke the specific statutes by their name in order to trigger legal protections, *Burnett v. LFW Inc., 472 F.3d 471 (7th Cir. 2006); Criado v. IBM Corp., 145 F.3d 437 (1st Cir. 1998)*. The determination as to whether an employee has put their

employer on notice of a potential statutory claim is if the employee uses the employer's own compliance process to make a designated accommodation request. The employee's use of the employer's request or leave form — regardless of whether the employee mentions FMLA or ADA — is protected at the onset and after receiving the communication the employer cannot claim unawareness of the employee's participation in protected activities because the employer's own framework designated the reporting channel.

The logical foundation of the FMLA and ADA Reasonable Notice Doctrine presents the same concept that the policy-bridge argument also communicates, *Stoops v. One Call Commc'ns, Inc., 141 F.3d 309 (7th Cir. 1998)*. Reasonable Notice applies regardless of what specific words the employee has used within their report because they have used the framework exactly as directed by the employer. The framework provided by the employer establishes the sufficiency of the employee's communication.

*NLRB Protected Concerted Activity Framework*

The National Labor Relations Board (NLRB), federal courts, and appellate courts have consistently held that when an employer's policy, handbooks, code of conduct, compliance reporting framework, and communications direct employees to report certain conduct through designated channels and the employees use those channels as intended and as formatted by the employer that those communications

are protected activity regardless of how the employee characterizes the complaints, *NLRB v. Washington Aluminum Co., 370 U.S. 9 (1962)*. The employer cannot encourage employee reporting through a specific channel and then also later deny the employee protections.

These equitable principles are similarly reflected in this case on appeal: where FedEx directed its employee (Sanders) to understand "harassment" as an "Anti-Discrimination" identifier to be reported through Human Resources channels designated for EEO compliance. FedEx also prohibits retaliation against employees who use those channels. FedEx provided the very framework and the very terminology — that the Appellant used — as an EEO concept. Now that their own employee (Sanders) followed their companywide instructions exactly as stated in their written policy and guidelines, FedEx now wants to argue in court that the Appellant was somehow not opposing discrimination. Federal labor law recognizes that employer created, employer directed reporting frameworks can define protected conduct.

***The § 1981 Independent Retaliation Protection***

The Appellees' brief addresses the Appellant's Title VII and § 1981 Retaliation claims together; however, § 1981 provides an independent retaliation protection that is remiss of the Appellees to disregard. *CBOCS West, Inc. v.*

*Humphries, 553 U.S. 442 (2008)*, decided by the Supreme Court held that retaliation for complaining about race discrimination interferes with the right to make and enforce contracts free of racial discrimination. Sanders' case presents a direct application of CBOCS West's reasoning, FedEx prohibits retaliation for an employee reporting EEO violations and provides the terminology it recognizes as EEO violations which it specifically lists “harassment” under.[5] When Appellant used her employer’s contractually-defined reporting EEO channels — and she also used the employer’s contractually-defined EEO terminology — she was acting in accordance with the specific terms of her employment relationship

Additionally, by the Appellees tying the Appellant’s promotion to a requirement for her to give an oath to not participate in protected activities the retaliatory provision became an unlawful term and condition of Appellant's employment contract with FedEx thusly violating § 1981 independent retaliation protections. When Hersma conditioned the Appellant’s promotion on the cessation of her protected Human Resources complaints, he was not merely retaliating against her for using internal HR channels he was interfering with her legal right under § 1981 to participate in the contractually-established mechanism for opposing race discrimination in the employment relationship.

Protections under § 1981 explicitly provide direction regarding the employer-employee contractual relationship and the employer established the EEO

[5] ROA. 1097. (Filename: “(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook” p.g. 18)

reporting framework that is central to the question of reasonable belief in this case. The terms and conditions of employment are central to discrimination analysis, *Hamilton v. Dallas County, No. 21-10133 (5th Cir. 2023); Garcia v. Professional Contract Services, Inc., 938 F.3d 236, 241 (5th Cir. 2019)*. Because the Appellees have not addressed the legal context rooted in § 1981 that supports remand/reversal in this case, they have simultaneously offered this Court no basis to affirm on that ground particularly.

**DEPOSITION TESTIMONY ESTABLISHES SUMMARY JUDGMENT EVIDENCE**

The Appellees spend substantial portions of their briefing on the argument that Appellant's Audio Recordings were not properly authenticated and therefore cannot defeat Summary Judgment. However, this argument suffers both foundational and factual deficiencies never addressing that the Appellant's Deposition Testimony (sworn and taken under oath) independently recounts several instances of Direct Admissions of Retaliatory Intent by Appellee Hersma explicitly conditioning her promotion solely on the cessation of her participating in protected activities. The Deposition Testimony is independently indisputable admissible evidence and requires no authentication. This competent Summary

Judgment evidence provides evidence in an admissible form that the Appellees made Admissions that they acted with Retaliatory intent against the Appellant.

Under controlling Fifth Circuit precedent *Allen (2023)*, if a decision-maker (Appellee Hersma) explicitly links a negative employment action (denial of promotion) to the filing of Human Resources complaints, that is evidence of retaliatory intent that is supported by the Appellant's Deposition Testimony under oath and corroborating audio recordings. Supreme Court precedent *Crawford (2009)*, decided that informal complaints are indeed legally protected and that the employer's perception, interpretation, motive, and retaliatory response to an employee's protected activity reinforces and effectively establishes the protected nature of the employee's activities. The Supreme Court emphasized that employer interpretation and response are central to the analysis. Under the binding law of *Crawford (2009),* Appellee Hersma's admissions reinforce and establish that the employer (Appellee FedEx Office) understood that the Appellant was engaging in protected opposition to discriminatory conduct, were a threat to the company, and took adverse actions to retaliate against the Appellant for her protected activity. This Court ruled that Direct Evidence of retaliation precludes summary judgment

creating a genuine dispute of material fact that must be resolved by a jury, *Allen* (2023).

The Appellant's deposition testimony specifically and under oath recounts that Hersma stated:

- "In order for me to approve you for any promotions, the HR stuff, that has to stop."[6].
- The Appellant further testified under oath that Hersma told her he considered cessation of HR complaints a "sign of maturity"[7] required for a leadership role, that he "needed her word"[8] that she would not file further complaints, and;
- That only after she agreed to those conditions did he call the following day to say that he and Richardson had decided she "had NOW earned her promotion."[9]

This deposition testimony is sworn evidence from a witness with personal knowledge of the conversations. It is all independently admissible. This very Court in *Lee v. Offshore Logistical & Transport, LLC*, 859 F.3d 353 (5th Cir. 2017)

---

[6] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[7] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[8] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[9] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

determined that evidence does not need to be authenticated at summary judgment; it merely needs to be capable of being reduced to an admissible form at trial. The Appellant's sworn deposition testimony guarantees that form. The Appellees quote *Yarbrough* stating that "conclusory and unsubstantiated assertions" are insufficient to defeat Summary Judgment…the statements from Hersma are not being *concluded* by the Appellant as retaliatory the statements simply and absolutely are clear retaliatory admissions and a jury could determine that as well. Furthermore, Deposition Testimony in addition to Audio Recordings and an Unsworn Declaration at the Summary Judgment stage is well substantiated.

Significantly, Appellees do not dispute the substance of what Hersma said. Nor does their brief argue that Hersma never made these statements. They argue about the evidentiary form through which those statements are presented. Yet, the deposition testimony provides the admissible form independent of the recordings. Direct evidence of retaliatory motive — which is what Hersma's statements constitute — precludes summary judgment. A reasonable jury could find that Hersma conditioned Appellant's promotion on her agreement to relinquish her right to file Human Resources complaints based on her sworn Deposition Testimony alone. That finding creates a genuine dispute of material fact that summary judgment cannot resolve. *Reeves (2000); Tolan (2014).*

***Rule 901 Personal Knowledge Testimony***

Under Federal Rule of Rule of Evidence 901(b)(1) authentication may be accomplished by "testimony that an item is what it is claimed to be" by "a witness with knowledge." Appellant has personal knowledge of the conversations with Hersma because she was present for them and was a participant. She testified about them in her Deposition under oath and her personal knowledge satisfies Rule 901 for civil summary judgment purposes. Rule 901(a)’s liberal admissibility standard is used in cases involving electronic evidence and these items are authenticated through witness testimony and circumstantial evidence.

Additionally, according to 28 U.S.C. § 1746, wherever, under any law of the United States, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same, such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated. The Appellant's Unsworn Declaration under 28 U.S.C. § 1746 (signed as true under penalty of perjury) has the same legal force as a sworn affidavit and independently

establishes the content of the conversations through first-hand witness testimony. If a party presents evidence that is "reducible" to admissible evidence at trial, the party can survive summary judgment. Summary Judgment evidence if it is reducible to admissible evidence at trial will be considered, *Major League Baseball Props. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008); Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).*

***Critically Inappropriate Use of Johnson — a Criminal Case***

The Appellees rely exclusively on *United States v. Johnson, 943 F.3d 214 (5th Cir. 2019)*, to argue that audio recordings require testimony about recording equipment fidelity and absence of material alterations. *Johnson* is inappropriate to use in this a civil case for a critical reason: it is a criminal court ruling based on a high criminal court standard involving government level standards.

*Johnson* is a criminal case involving government wiretapping, representing a context where authentication requirements are substantially higher because of the sensitive nature of these occurrences, that the government bears the burden of proving the recordings, and the opposing party has no knowledge of the recordings. None of these factors relate to this case. The Appellant recorded the audio recording herself, she was present for them, a participant in them, has testified to her personal knowledge of the conversations recorded under oath and

under the penalty of perjury twice regarding who was speaking, when they happened, and what was said during these conversations. The standard for civil Summary Judgment evidence is much more liberal and is satisfied under standards of Rule 901(a), *Fraser (2003)*.

## YARBROUGH IS DISTINGUISHED ON EVERY MATERIAL FACT OF THIS CASE

The Appellees devote the core of their brief to *Yarbrough v. SlashSupport, Inc., 152 F.4th 658 (5th Cir. 2025)*, insisting that it is "directly on point” Appellees' Brief p.g. 19 and "indistinguishable" Appellees' Brief p.g. 20. from this case. Neither characterization withstands deeper analysis. Distinguished by every material fact of this case, *Yarbrough* is ill-fitted on the most critical facts of this appeal. *Yarbrough* and this case differ on six (6) facts: dispositive, procedural, and material. Each of those six (6) facts, taken together, prevent *Yarbrough* from controlling the outcome of this case.

*Yarbrough* focuses on complaints regarding management style, policy enforcement, and interpersonal difficulties with no foundational basis connecting the conduct in question to race which it found did not constitute protected activity under the reasonable belief standard. That holding is uncontested and the Appellant’s case does not present that fact pattern.

Sanders' case presents something *Yarbrough* never addressed:

Wherein an employee who repeatedly reported a sustained 11-month pervasive racial pattern through her employer's own EEO designated channel, using her employer's own EEO Anti-Discrimination defined terminology, within a written policy framework that explicitly defines "harassment" as a form of "unlawful discrimination"[10] and literally states that "harassment" is "considered a violation of the FedEx Office policy of Equal Employment Opportunity"[11] category of conduct. That question remains open after *Yarbrough*, and *EEOC v. Rite Way Service, Inc.*'s answer to it is clear.

*THE SIX (6) DISTINGUISHED FACTS OF YARBROUGH*

1. **Yarbrough Resolved Retaliation Claims Under the Post-Trial JMOL Standard — Not the Federal Summary Judgment Standard which Governs this Appeal**

The Distinguished Material Fact is both procedural and dispositive. The Appellees cite *Yarbrough's* retaliation rulings against Lofland and Tijani without disclosing that those holdings were at the JMOL stage far after a trial by jury where all evidences had already been presented. The Justice as a Matter of Law (JMOL)

[10] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 15)

[11] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 15)

Standard asks "whether the record contains sufficient evidence to support the jury's ultimate findings." *Yarbrough*, 152 F.4th at 665 (quoting *Bryant v. Compass Grp. USA, Inc.*, 413 F.3d 471, 475–76 (5th Cir. 2005). This case's evidence has not yet had the chance to be presented to any jury for them to have any "ultimate findings". Additionally, in Yarbrough the fact that even after having their evidence presented to a reasonable jury and still could not survive a post-verdict inquiry reveals that their evidence was not just thin, it was essentially nonexistent.

In this Appeal, the Appellant is at Summary Judgment. This pre-trial stage has a far more liberal standard than the post-trial JMOL stage. At Summary Judgment, the question is only whether a genuine dispute of material fact exists. *Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Appellees application of a post-trial JMOL holding to a pre-trial summary judgment case without acknowledging this fundamental procedural difference is an error. This Fifth Circuit Court's Summary Judgment standard is unambiguous: all evidence must be viewed in the light most favorable to the non-movant, and all reasonable inferences must be drawn in her favor. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014). The question in this regard is whether a reasonable jury *could* adopt the Appellant's interpretation. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). The *Yarbrough* ruling, made at the JMOL stage after a full trial, does not address that question and because it was post-trial it is held to a very different standard.

### 2. Employer EEO Policy Framework Is Fully Absent From Yarbrough

Perhaps, the most critical distinction between *Yarbrough* and this case, is that *Yarbrough* never questions, answers, or even considers a discussion of the employer's global company policy's designation of "harassment" under its EEO and Anti-Discrimination framework. *Yarbrough* contains no examination of the employer's EEO policy which specifically directs employees to report "harassment" through a designated Equal Employment Opportunity (EEO) compliance channel[12]. An employer's own written corporate, global policy taught to its employees about how to report EEO violations[13] is relevant to the reasonable belief analysis. Contrary to the Appellees insistence that *Yarbrough* is "directly on point" regarding a legal question it never even addresses at all, the Appellant's case presents a distinguished question on a unique issue.

FedEx's own corporate global company policy — including the FedEx Team Member Handbook and the FedEx Code of Conduct — states "employees who believe their Equal Employment Opportunity (EEO) rights have been violated must report the incident through the Anti-Harassment reporting process."[14] The

[12] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 2) - FedEx Code of Conduct.pdf" p.g. 11)

[13] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 15)

[14] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 15)

Appellees' Handbook direct instructs employees "team members who feel they have had their EEO rights violated must immediately report the incident to management using the reporting process outlined in the *harassment* policy."[15] FedEx's Code of Conduct specifically groups "discrimination" and "harassment" under the heading "Equal Opportunity and Anti-Harassment."[16] FedEx explicitly groups "discrimination" and "harassment" under its Equal Employment Opportunity commitment.When an employee follows the specific reporting channels laid out in an "Equal Employment Opportunity" policy to report "harassment," they are engaging in protected opposition as defined by the employer's own compliance framework.[17] Under this framework, it is reasonable for an employee at FedEx to deduce that within this very specific written framework — where FedEx specifically defines its own harassment reporting channel[18] *as* the mechanism for reporting EEO violations — harassment and EEO opposition are inherently taught and communicated by the employer as one and the same.

The Appellees' brief describes the correct legal standard, "whether the employee's communication could reasonably be understood as opposing discriminatory treatment." Appellees' Brief p.g. 22. Which is exactly the question

---

[15] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 15)

[16] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 2) - FedEx Code of Conduct.pdf" p.g. 11)

[17] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 16)

[18] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 2) - FedEx Code of Conduct.pdf" p.g. 11)

the Appellant's policy-bridge argument addresses. However, also within the Appellees' response they write, "The fact that a company's internal policies use the term "harassment" broadly does not alter the legal definition of protected activity under the applicable law." Appellees' Brief p.g. 21. Despite the fact that the Appellant has never suggested that the FedEx policy would ever transform the federal standard or Title VII's legal definition. The Appellant has only argued that the context of what FedEx's company policy taught to its employees is relevant to the *reasonable belief standard* specifically in regards to whether a reasonable employee in her position could believe she was opposing unlawful discrimination when she used FedEx's own EEO terminology through FedEx's own EEO reporting channel. *See EEOC v. Rite Way Service, Inc.*, 819 F.3d 235, 240 (5th Cir. 2016) (reasonable belief standard requires examining context).

### 3. Yarbrough Defendants Never Made Direct Admissions of Retaliatory Intent (Pretextual Explanations) Conditioning Promotions on the Cessation of Complaints - Hersma Did

None of the Plaintiffs' in *Yarbrough* presented evidence in audio recordings, affidavits, deposition testimony, or otherwise that even suggested that the Defendants in that case ever plainly admitted to conditioning their employment decisions on the Plaintiffs' ceasing making Human Resources complaints — in this

case on Appeal — Hersma absolutely did. This Court ruled that direct evidence of retaliatory intent precludes Summary Judgment, *Allen v. U.S. Postal Service*, 63 F.4th 292, 298 (5th Cir. 2023). Sanders' testified under oath during her Deposition Testimony that Hersma explicitly admitted retaliatory intent, conditioning her ability to receive a promotion and the pay raise that came with it on her giving him her "word"[19] that she would refrain from making Human Resources complaints. Under *Porter v. Houma Terrebonne Housing Authority, No. 14-31090 (5th Cir. 2015)* questions of retaliatory motive belong to the jury.

The Appellant's case has direct, undisputed (the Appellees themselves have not even disputed it) evidence that *Yarbrough* never had, direct admissions from a supervisor of retaliatory intent establishing further pretext. Appellee Hersma's own words, confirmed in Sanders' Deposition testimony under oath and audio recording, conditioned Sanders' promotion on her agreement to stop filing HR complaints.[20]

*Crawford v. Metropolitan Gov't of Nashville*, 555 U.S. 271, 276 (2009) requires the court to consider the employer's interpretation and response as central to the protected activity analysis. The extreme nature of Hersma's response is not only direct evidence of retaliatory intent it is also circumstantial evidence of how

[19] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[20] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

well the Appellees actually understood Sanders' complaints as EEO opposition — which is precisely what the reasonable belief standard under *Crawford* requires this Court to evaluate. Any manager who genuinely believed he was merely dealing with a "personality conflict" Appellees' Brief p.g. 3 between two employees does **not** condition a promotion on the Black employee — who is repeatedly filing escalating complaints describing "targeted harassment" by a white coworker through the reporting process outlined in the *harassment* policy[21] for internal EEO violations reporting — agreeing to stop filing those EEO reports. Moreover, that same manager would not frame the Black employee's cessation of using the designated EEO reporting channel as a test of "leadership"[22]. In this case, *Allen* governs, *Yarbrough* does not.

### 4. Yarbrough Plaintiffs' Complaints Had No Racial Context Whereas the Appellant's Complaints Described an 11-Month Long Pervasive Racial Pattern that Culminated in Explicit Racial Identification

Lofland and Tijani both complained of management being unprofessional, unpleasant, giving incorrect assignments, and inconsistent policy enforcement.

[21] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 15)

[22] ROA. 1097. (Filename: "(App. A, Vol. 1, Ex. 1) - Unsworn Declaration for Manual Filing" p.g. 4); ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

Absolutely nothing in context relating to race. No reasonable person reading those complaints would infer racial motivation. Sanders' complaints present an entirely different equation. Over an 11-month period, the Appellant reported a sustained pattern of pervasive conduct by a White coworker directed specifically at her, a Black employee. The conduct escalated from targeted harassment[23], creating a hostile work environment[24], to physical threats, intimidation, to stalking, followed by the fifth complaint[25] explicitly identified racial bias, racial patterns affecting multiple Black employees, and discriminatory conduct[26] by white coworkers and white supervisors. The Appellees' sole focus on the first two complaints ignores the discriminatory pattern detailed within Sanders' complaints. The reasonable belief standard is assessed across the entire context of opposition — not merely at the moment of the first complaint. *Crawford* (2009). An employee, such as Sanders' in this case, who files five (5) formal Human Resources complaints over 11-months culminating in explicit racial identification is communicating a continuous course of protected opposition.

In *Yarbrough*, Tijani specifically used the word "discrimination" in his complaints, yet this Court still found no protected activity for the reason that there

---

[23] ROA. 511.

[24] ROA. 494.

[25] ROA 1097 (Filename: "(App. F, Vol. 6, Ex. 2) - PATTERN OF DISCRIMINATION - Coercion - Retaliation - Physical Violation")

[26] ROA 1097 (Filename: "(App. F, Vol. 6, Ex. 2) - PATTERN OF DISCRIMINATION - Coercion - Retaliation - Physical Violation" p.g. 1)

was never any racial dimension to the context of the complaints or the conduct detailed. This Court held that a racial label applied to non-racial conduct does not establish protected activity even by using the word "discrimination". That ruling does not control this case where there is conduct *with* a genuine racial dimensions: a White coworker's sustained targeted conduct against a Black employee in a racially volatile environment, reported by the Black employee in an explicitly EEO designated channel using the employer designated terminology to describe conduct as defined within its very own "Equal Opportunity and Anti-Harassment" framework which all culminated to satisfy the reasonable belief standard.

### 5. Yarbrough Defendants Documented Non-Discriminatory Basis for Employment Decisions

One the most distinguished facts of *Yarbrough* that is contrary to this case on Appeal, is that every employment action that the Plaintiffs in *Yarbrough* complained about had a documented, non-discriminatory, race-neutral explanation by the Defendants that were uncontested. Because of this, JMOL was granted against the Plaintiffs.

By contrast in this case on Appeal, the Appellees do not even dispute that the decision-maker, Appellee Hersma, made direct admissions of retaliatory intent, nor have they offered a non-discriminatory, legitimate, or documented explanation for

conditioning the Appellant's promotion on her agreement to cease filing Human Resources complaints. Notably, the Appellees also do not argue that what Hersma said was somehow misunderstood or taken out of context.

The Appellees' response to these direct admissions of retaliatory intent is that they constitute no evidence of retaliation because they claim that the underlying complaints were not protected activity. This circular reasoning assumes the answer to the protected activity question in order to attempt to retroactively defeat the direct evidence argument. The direct evidence argument and the protected activity argument must be resolved together, not with the Appellees' preferred resolution of one assumed away. In *Yarbrough* every act had a documented, non-discriminatory explanation. In this case on appeal there is no explanation or dispute for the retaliatory employment action which the decision-maker himself admitted was due to retaliatory intent.

### 6. The Novel Question This Case Presents is in No Way Addressed by Yarbrough

This case presents a specific question that must be solved under *EEOC v. Rite Way Service, Inc.:* When an employer's own written EEO policy defines "harassment" as "unlawful discrimination" and designates the EEO compliance channel, does an employee who files formal EEO complaints about sustained

pervasive conduct by a white coworker — using the employer's designated EEO terminology, through the employer's own EEO designated channel — engage in protected opposition under the reasonable belief standard?

The Appellees' response claims that *Yarbrough* answers that question, it does anything but as *Yarbrough* does not even present any of the conditions that form that concept. *Yarbrough* did not involve employer EEO policy frameworks satisfying the foundation of a reasonable belief analysis in the context of employer-defined reporting channels and employer designated terminology as with *Sanders*.

The controlling framework of *EEOC v. Rite Way Service, Inc.* requires this Court to evaluate the *context* in which the employee's opposition occurred. The context that:

- FedEx's own policy groups "harassment" and "discrimination" under the same Equal Opportunity umbrella[27],
- The Appellees direct employees to report EEO violations within the employer-designated EEO reporting channel,
- Formal Human Resources complaints are to be submitted through that EEO reporting channel using the company designated terminology,
- The decision-maker (Hersma) admitted conditioning a promotion on cessation of those Human Resources complaints,

[27] ROA. 1097. (Filename: "(App. D, Vol. 4, Ex. 1) - FedEx Team Member Handbook" p.g. 18)

- The Appellant (who is Black) detailed an 11-month long pattern of pervasive conduct by a White coworker using the employer's designated terminology that they specifically tell their employees is an EEO violation, "harassment";

Under *EEOC v. Rite Way Service, Inc.*'s context-sensitive analysis, a reasonable employee operating within FedEx's own EEO framework could reasonably be understood as opposing discriminatory treatment when she used that framework exactly as FedEx directed. The District Court cannot penalize Sanders for using FedEx's own EEO vocabulary rather than formal legal terminology. *EEOC v. Rite Way Service, Inc.* ("magic words are not required"). This Court should not impose such a requirement in a published opinion that would effectively allow employers to design EEO frameworks, in their global company policies, instructing employees to report discrimination and then deny protection to employees who follow those frameworks exactly as their employers designed it as with Sanders.

**TIMING ERROR RELIED UPON BY DISTRICT COURT**

The timing sequence of this case is essential to maintain context on causation. The timing error the Magistrate Judge ruled on is a material error. The Appellees argue that the error is immaterial; however, that argument has a

fundamental flaw which is based solely on their assumed answer to the question of protected activity.

The timing sequence has always been:

- August 1, 2022 - Hersma informed the Plaintiff-Appellant of the retaliatory contingency that "the HR stuff, that has to stop" in order to receive her promotion[28]
- August 1, 2022 - The Plaintiff-Appellant is coerced into agreeing to the terms and conditions to finally get her promotion[29]
- August 2, 2022 - Hersma informs the Plaintiff-Appellant that he and Richardson have decided that she had "now earned her promotion" and informed her of her pay raise[30]
- August 8, 2022 - The Plaintiff-Appellant is promoted to Lead Consultant after agreeing to retaliatory contingency[31]

---

[28] ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 23"); ROA. 632.

[29] ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page: 144 Line: 1-13)"); ROA. 632.

[30] ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

[31] ROA. 1097. (Filename: "((App. C, Vol. 3, Ex. 1) - Plaintiff's Deposition Transcript (Page 143: Line: 17-25, Pages: 144 Line: 1-13)"); ROA. 632.

This sequence establishes that the retaliatory contingency by the Appellees preceded the promotion and that the Appellant's agreement to the contingency under duress is what finally led to her being allowed to receive a promotion and the pay raise that came with it. Not a timeline of events — as presented by the District Court — where the promotion preceded and mooted the retaliation. The Magistrate's finding that the promotion had already occurred was not just inaccurate; it inverted the causal sequence of the events undermining the tenets of this case. Temporal proximity is critical to causal connection, *Clark County School District v. Breeden, 532 U.S. 268 (2001).* The District Court's reliance on an incorrect factual sequence of events constitutes an independent basis for reversal. *Tolan v. Cotton, 572 U.S. 650 (2014)*. Accordingly, the timing error cannot be dismissed as immaterial until the protected activity question is resolved under the proper legal standards established by *EEOC v. Rite Way Service, Inc.*.

## CONCLUSION

The District Court erred in granting summary judgment because it resolved disputed facts, weighed evidence, and drew inferences against the non-movant rather than in her favor. The record contains evidence — including sworn deposition testimony and retaliatory admissions by the Appellees — from which a reasonable jury could find that Sanders engaged in protected activity. For those

reasons, Appellant respectfully requests that this Court reverse the District Court's judgment and remand this case for further proceedings.

Respectfully Submitted,

*/s/ Ivana Sanders*

Dated: July 5, 2026

PRO SE APPELLANT

## CERTIFICATE OF SERVICE

This is to certify that on the day of Sunday July 5, 2026, the foregoing APPELLANT'S REPLY BRIEF was filed electronically and that it is available for viewing and downloading on the Fifth Circuit Court's CM/ECF system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

Respectfully Submitted,

*/s/ Ivana Sanders*

PRO SE APPELLANT

## CERTIFICATE OF COMPLIANCE

Pursuant to 5TH CIR. R. 32.2.7(c), undersigned counsel certifies that this brief complies with the type-volume limitations of 5TH CIR. R. 32.2.7(b).

1. Exclusive of the portions exempted by 5TH CIR. R. 32.2.7(b)(3), this brief contains **<u>6490</u>** words printed in a proportionally spaced typeface.

2. This brief is printed in a proportionally spaced, serif typeface using Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes.

3. Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4. Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5TH CIR. R. 32.2.7, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

Respectfully Submitted,

*/s/ Ivana Sanders*

PRO SE APPELLANT